## A. L. DARNELL v. O. T. LYON.

### No. 6.

1. **Certificate of Dissent—Jurisdiction in Cases from County Courts.**—This court will entertain jurisdiction of questions certified to it as novel, etc., by the Court of Civil Appeals, in cases in which it has final jurisdiction. Chief Justice STAYTON dissenting.

2. **Several Undertaking — Subscription.** — A subscription paper containing an offer to induce the construction, etc., of a railway, contained the words, " we, the undersigned, hereby promise and agree." In the paper was the further provision, "each subscriber should be liable only for the amount opposite his name." *Held*, that the intention was that the obligation was to be several, and each subscriber could be separately sued.

3. **Construction of Power.**—A committee appointed to act for subscribers offering money to induce the building of a designated line of railway. can not go beyond their instructions accompanying such appointment. See example.

4. **Construction of Contracts.**—See case where certain contracts made by a railway company with a committee representing a number of subscribers to an offer of money to the railway company, in consideration that it should build a designated line of railway, was held to be in excess of the power of the committee, and not binding upon the subscribers appointing said committee.

5. **Procedure on Certified Questions.**—Where the action of this court upon one of the certified questions practically settles the litigation, other questions certified will not be considered.

ON MOTION FOR REHEARING.

**6. Practice on Certified Questions to the Supreme Court.**—When questions of law are referred by the Court of Civil Appeals to this court for determination in the first instance, this court has no power to pass upon any questions except those submitted. Nor can it inquire into their bearing upon the ultimate decision of the case.

THIS case came before the Supreme Court on certificate, under section 35 of the act to organize the Courts of Civil Appeals, from the Court of Civil Appeals, Second District, in an appeal from the County Court of Grayson County.

The said court certified certain questions as novel and important, arising upon the construction of certain instruments, copies of which accompanied the certificate.

The questions certified and instruments construed are sufficiently given in the opinion.

*Don A. Bliss*, for appellant.

*T. W. Gregory*, for appellee.

GAINES, ASSOCIATE JUSTICE.—In this case the Court of Civil Appeals. of the Second Supreme Judicial District have certified to us certain questions for decision, in accordance with the provisions of section 35 of the act to organize the Courts of Civil Appeals, approved April 13, 1892. Laws of 1892, p. 31. The certificate sent to this court contains copies of the following written instruments: First. A subscription offer signed by citizens. of the city of Sherman for the purpose of inducing the construction of a branch of the St. Louis, Arkansas & Texas Railway to that city. This instrument nominates and appoints a committee of three citizens to make a contract on behalf of the subscribers with the railway company. Second. A contract between the committee, acting on behalf of the subscribers, and the company for the construction of the road. Third. A contract between J. H. Britton and O. T. Lyons on the one part and the railway company on the other, by which the former, among other things, bind themselves to procure the right of way and grade the road at their own cost and expense from Sulphur Springs to Sherman, and the company, in consideration thereof, assign to them the subscription list first. mentioned.

The questions submitted are:

"1. Whether the subscription agreement is a separate contract, so as to admit of a separate suit thereon against each subscriber for the amount. of his subscription.

"2. Whether, under the terms of the subscription agreement, the com-

mittee had authority to make the subsequent contracts, as shown in said exhibit.

" 3. Whether, in a suit by Britton and Lyon, as assignees, or by the railway company, against one of the subscribers, the latter could interpose as a defense, in the nature of a failure of consideration, the noncompliance of the railway company with that part of the agreement which required it to locate and maintain within the city of Sherman passenger and freight depots, and to establish and maintain at said city a division of its road, and to build such round houses and machine shops as might be necessary therefor, assuming that it had complied with so much of the contract as required it to complete the construction of its road into the city of Sherman on or before the 1st of August, 1887, and to maintain, equip, and operate the same."

We are clearly of the opinion, that the first question should be answered in the affirmative, although the words " we, the undersigned, hereby promise and agree," if unqualified, would impart a joint undertaking; yet the subsequent provision in the writing, that " each subscriber " should " be liable only for the amount opposite his name," leaves no doubt that the intention was that the obligation was to be several.

The second question is more difficult. Its determination requires a conscruction of that part of the subscription paper which authorizes the committee to make a contract with the company, as well as of the contract which was actually made. In effect, the subscribers to the former instrument severally offer to pay to the company the amounts set opposite their respective names, " in consideration that the railway company shall within a reasonable time after the acceptance hereof construct, maintain, and operate a railway from or near Mount Pleasant, Texas, to Sherman, Texas, to connect with the railway of said company, it being formerly the Texas & St. Louis Railway; and shall establish and maintain in the city of Sherman, at a convenient place, depots for freight and passengers." The committee, by the terms of the offer, are empowered " to make a suitable contract with the said railway company, and to provide therein for the manner of collecting this subscription, and all other details that may be found necessary as to the location of depots, and whatever else that may be of interest to the town in making the same."

By the contract which was actually entered into on behalf of the subscribers by the committee, they undertook to bind the subscribers to " procure and pay for the right of way for said company from the west line of Hopkins County to and within the limits of the city of Sherman," and to " cause to be constructed the grade of said road from the town of Sulphur Springs, in Hopkins County, to and within the corporate limits of the city of Sherman," etc. They also undertook to bind the subscribers to procure adequate depot grounds for the railway from the line of Hop-

458        TEXAS SUPREME COURT REPORTS.        [April,

kins County to the city of Sherman, as well as suitable and adequate grounds for depot and terminal facilities in said city.

In consideration of these undertakings on behalf of the subscribers by the committee, the railway company, among other things, agreed to accept the grade and to construct, operate, and maintain the railway to the city of Sherman, on or before the 1st day of August, 1887.

These are the prominent features of the contract, and we think they make it apparent that the committee, by executing it, exceeded the powers which the subscribers had conferred upon them. They were authorized to make out any contract which they might think would secure the construction of the road—not a contract to bind their constituents to do anything but to pay the amounts of their subscriptions, but a contract that the railway company should construct the road in consideration of the sums respectively promised by them.

The contract as actually made attempts to bind the subscribers to an undertaking not only to procure the right of way and depot grounds, but also to construct the grade. Until this was done the railway company was bound to do nothing. The offer on part of the subscribers clearly shows that it was contemplated, that in order that the railway company should avail themselves of it, it should promise to construct and maintain the road, without further aid from them than the money they had promised to pay. The contract attempts to bind them to do what they did not offer to do, and what they evidently contemplated the railway company should promise to perform. It binds the railway company to act only on condition that they should comply with stipulations which they did not authorize their committee to obligate them to perform. It is evident therefore that the contract contemplated by the subscribers and that actually made are essentially different.

If it could be said that the agreement accomplished the same result as that contemplated, and imposed no additional burden upon the subscribers, it may be that the contract should be upheld, as being substantially the same as that which was authorized. But such is not the fact.

The two contracts — that between the railway company and the committee, and that between the former and Britton & Lyon — indicate that these parties contemplated that Britton & Lyon should do all that the committee had promised on behalf of the subscribers, in consideration of an assignment to them of the subscription list. But the subscribers did not empower the committee to stipulate for the promise of Britton & Lyon to do a part of the work, and that of the railway company to do the remainder. Besides, the railway company's promise was conditional upon the compliance of Britton & Lyon with their agreement, or upon the depot grounds and right of way being provided and the grade completed by some other persons who might be substituted in their place. It follows, we think, that the contract actually made is not the same in substance as

that contemplated by the parties to the subscription list, and that therefore the latter were not bound by it. For the reasons stated, we are of opinion that the second question must be answered in the negative.

In the view we take of the case, the third question becomes abstract, and need not be answered.

Delivered April 27, 1893.


STAYTON, CHIEF JUSTICE, dissenting.—There can be no doubt of the intention of the Legislature to confer upon the Supreme Court jurisdiction of a question of law found in a case appealed to a Court of Civil Appeals, although that court had made no decision of the question or cause, interlocutory or final in character; nor can there be doubt of the intent to make the decision of the Supreme Court on the question certified binding upon the Court of Civil Appeals.

In the matter before this court, the Court of Civil Appeals has made no decision of the cause nor of the questions certified, and the question arises, whether the Legislature had power to confer such jurisdiction on this court. If it had, this court must exercise it; but if it had not, the exercise of such power is usurpation.

The Constitution declares, that " said Courts of Civil Appeals shall have appellate jurisdiction coextensive with the limits of their respective districts, which *shall extend to all civil cases* of which District Courts or County Courts have original or appellate jurisdiction, under such restrictions and regulations as may be prescribed by law."

If, under this clause of the Constitution, the Legislature had not restricted the jurisdiction of these courts, they would have had appellate jurisdiction of every civil cause tried in a District or County Court in the exercise of original or appellate jurisdiction, simply because it is conferred by the Constitution.

That jurisdiction has been somewhat restricted by the Legislature under the power conferred by the Constitution; but that the Court of Civil Appeals has jurisdiction of the cause in which the questions certified are found is conceded.

What is the character of that jurisdiction? To this it must be answered, that it is appellate and exclusive so long as the cause remains undecided in that court. This would follow if there was no other part of the Constitution bearing on the question except that before quoted; for the declaration that the jurisdiction of the several Courts of Civil Appeals " shall extend *to all civil cases*," etc., necessarily makes their jurisdiction in the classes of cases referred to exclusive, for the time, in the absence of some other provision in the Constitution giving to some other court concurrent or co-ordinate jurisdiction.

When it is said that the jurisdiction of these courts is exclusive, this word is used to express a jurisdiction not concurrent, and it is not con-

tended that while it is in this sense an exclusive jurisdiction, that it is a final jurisdiction.

That it is not a final jurisdiction, and in this sense an exclusive juristion, is made apparent by that part of the Constitution which determines the character of jurisdiction possessed by this court.

The Constitution provides, that "the Supreme Court shall have appellate jurisdiction only, except as herein specified, which shall be coextensive with the limits of the State. Its appellate jurisdiction shall extend to questions of law arising in cases of which the Courts of Civil Appeals have appellate jurisdiction, under such restrictions and regulations as the Legislature may prescribe."

This part of the Constitution shows that the jurisdiction to be exercised by this court is an exclusive and final jurisdiction, under such restrictions as the Legislature may make; *that it is appellate only*, and that it extends only to questions of law arising in cases over which Courts of Civil Appeals have appellate jurisdiction; while under another clause of the Constitution it is declared, " that the decisions of said courts [Courts of Civil Appeals] shall be conclusive on all questions of fact brought before them on appeal or error."

All these provisions of the Constitution show that it never was intended that the Courts of Civil Appeals and this court should have jurisdiction concurrent in nature in any case; and do further show that the purpose was to clothe this court with power, in the exercise of the appellate jurisdiction conferred, only to decide questions of law that had been passed upon by a Court of Civil Appeals, or that arise in a case decided by one of those courts.

A court is said to have jurisdiction concurrent or co-ordinate with that possessed by another when each has power, under the same facts and conditions, to determine and enforce the right of a litigant; and the general rule, when such jurisdiction is possessed by two or more courts, is, for the one first acquiring jurisdiction of a particular cause to retain it; but there is no instance, under the Constitution of this State, in which two courts can exercise concurrent or co-ordinate appellate jurisdiction.

On the contrary, that is carefully graded from the lowest court exercising appellate jurisdiction to the highest.

A cause may be appealed from a Justice Court to a County Court, and thence to a Court of Civil Appeals, under certain restrictions, but so long as the case is pending on appeal before the County Court its jurisdiction is exclusive, and a Court of Civil Appeals can exercise no jurisdiction over it until the County Court has decided the case, when its jurisdiction may be made to attach in all cases prescribed by law. These courts may, in their order, exercise appellate jurisdiction, but while the cause is with either court its jurisdiction is exclusive and not concurrent, although it may not be the court of last resort in the particular case. The same

would be true as to the jurisdiction of a District Court, a Court of Civil Appeals, and of this court in a probate matter appealed from a County Court to a District Court.

No one would contend that appellate proceedings could be prosecuted to a Court of Civil Appeals directly from a judgment rendered by a justice of the peace, thus passing by the County Court, which has an intermediate appellate jurisdiction in such cases; nor that an appeal or writ of error could be prosecuted to bring before this court for revision a decree of a County Court in probate, without the matter first having been heard in a District Court and then in a Court of Civil Appeals; and the reason why this could not be done, in either case supposed, lies in the fact that the Constitution has not conferred on a Court of Civil Appeals any power directly to review the judgment of a justice of the peace, but has conferred on such courts jurisdiction to review the judgment of a County Court made in the exercise of its appellate jurisdiction over a judgment rendered by a justice of the peace; and in the other has conferred upon this court appellate jurisdiction, in the exercise of which it may review a decision made by a Court of Civil Appeals which, in proper order, had reviewed a judgment rendered by a District Court in the exercise of that appellate jurisdiction conferred on it in probate cases decided by a County Court.

That the Court of Civil Appeals has full and complete appellate jurisdiction to hear and determine every question of fact or law involved in the cause from which questions are certified, can not be denied; that it has exercised this power is not claimed; and it manifestly follows, if this court has jurisdiction, that this is so because it may have, if the Legislature so provides, concurrent appellate jurisdiction with Courts of Civil Appeals of every question of law that may come before them; for no decision has been made by the Court of Civil Appeals which this court can review in the exercise of the only appellate jurisdiction conferred upon it by the Constitution or laws.

Jurisdiction of a given cause means the power to hear and determine the rights of the parties, as the judges of the court, under their official oaths, may think it ought to be; and to refer it to another court for a decision, and to simply register its decree as the rule of right between the parties, is in no sense the exercise of jurisdiction.

Appellate jurisdiction is given to the Courts of Civil Appeals solely in order that it may be exercised by them, and not simply that they may surrender this power, and refer a cause, or a question in a cause, which such court ought to decide, for the decision of this court, which would be but another method of giving this court jurisdiction of cases over which the Constitution declares the Courts of Civil Appeals shall have jurisdiction.

A court can no more surrender or refuse to exercise a jurisdiction conferred on it by law, than can it acquire a jurisdiction not given by law.

The several Courts of Civil Appeals and this court have all the jurisdiction conferred upon them by the Constitution, except as this may have been taken away by the Legislature under the power conferred on it by the Constitution to restrict the jurisdiction of those courts; but the Legislature has no power to confer upon a Court of Civil Appeals jurisdiction conferred on this court, nor to confer upon this court jurisdiction conferred by the Constitution on a Court of Civil Appeals. Their jurisdiction is separated by the Constitution, necessarily attaches at different stages of litigation, and can not become concurrent or co-ordinate in any matter.

Concurrence of jurisdiction must be given by law, the only source of jurisdiction, or it does not exist; it can not be made to depend on the volition of another tribunal having jurisdiction, nor upon the refusal of that court to act, or its order suspending action for a time, though under some circumstances a court refusing or suspending action in a cause of which it has jurisdiction may be compelled by some superior tribunal to adjudicate the right of litigants.

When appellate jurisdiction only is given to a court, this carries with. it the declaration that it is a court superior to some other court, and that its power is to be exercised in reviewing, and correcting when necessary, the judgments of such inferior court, and an essential to the exercise of this power is a judgment to be reviewed and affirmed or reversed, as the facts and law may require.

Ordinarily appeals or writs of error lie only from judgments final in their nature, and in this State few appeals have yet been allowed from interlocutory judgments.

That the jurisdiction of Courts of Civil Appeals, in so far as any question now involved goes, is appellate only, and that such is the jurisdiction of this court, does not affect the question, because the jurisdiction of each in its order is exclusive and not concurrent.

To authorize a Court of Civil Appeals to exercise its appellate jurisdiction there must be a final judgment by a District or County Court, as the law now stands; and to authorize this court to exercise its appellate jurisdiction there must be a decision or judgment of that character by a Court of Civil Appeals.

This is made clear by the Constitution itself, and legislation repugnant. to it has no effect.

Courts of Civil Appeals have " *appellate jurisdiction* coextensive with the limits of their respective districts, which *shall extend to all civil cases* of which the District or County Courts have original or appellate jurisdiction," etc.

Jurisdiction thus expressly conferred is necessarily exclusive when not.

conferred on some other court, and the words of the Constitution, read in the light of the sections of the same instrument conferring some appellate jurisdiction on County and District Courts, exclude the intent that the Legislature should have power to confer on a Court of Civil Appeals jurisdiction of a cause directly from a Probate or Justice Court, as fully as do they exclude the intent that the Legislature should have power to confer on such courts the original jurisdiction conferred by the Constitution on District and County Courts.

The Legislature would be as much wanting in power to confer on Courts of Civil Appeals, in the first instance, jurisdiction to try cases on appeal to either of its subordinate courts, as would it be to confer on such courts jurisdiction over cases of which those subordinate courts are given original jurisdiction; and so, simply because the Constitution has placed jurisdiction where it was intended it should be exclusively exercised; thus manifesting again the intent to grade appellate power and to confine that conferred on Courts of Civil Appeals narrowly to the review of judgments rendered in District or County Courts.

It is to these their appellate jurisdiction extends under existing laws.

The Constitution further declares, "that the decisions of said courts shall be conclusive on all questions of fact brought before them on appeal or error."

Was it ever contemplated that in any case a Court of Civil Appeals should decide the facts of a cause and not decide the law?

Certainly not, for this would not be the exercise of the jurisdiction conferred by the Constitution; it would not really be the exercise of jurisdiction at all, for it would not be either a hearing or determination of any right.

In the class of cases to which that belongs from which questions were certified, the Constitution provided, that they should "be certified to and the records thereof transmitted to the proper Courts of Civil Appeals, *to be decided by said courts.*"

They were required to be sent to Courts of Civil Appeals, *to be decided by them,* and not that they might send them, in whole or in part, to this court for determination in the first instance.

If we look to that part of the Constitution that fixes the jurisdiction of this court, the intent is not less certainly manifested.

So far as the present question goes, the declaration is, that "The Supreme Court shall have appellate jurisdiction only."

The purpose for which this appellate jurisdiction was given was to confer upon the Supreme Court power to review, and, if found erroneous, to correct, the judgments of some other courts, and not to confer on the Supreme Court the power, in the first instance, to determine for those courts what judgments they should render or what their rulings should be on questions of law involved in cases pending before them.

This results from the nature of the jurisdiction conferred.

The Constitution further declares, that this jurisdiction " shall extend to questions of law arising in cases of which the Courts of Civil Appeals have appellate jurisdiction."

Here we have not only a statement of the nature of the questions on which this court may exercise jurisdiction, but we are further informed that the questions must arise in cases over which appellate jurisdiction is given to Courts of Civil Appeals.

Thus is prescribed the jurisdiction of this court; but it was not deemed necessary to prescribe the stage in litigation at which this jurisdiction should or might be exercised, further than was done by the declaration that its jurisdiction should be appellate only; which implies, when not qualified, that the court from which appellate proceedings may be prosecuted must render a decree or judgment final in its character, which becomes the matter for review.

It has never been held in this State that a court having appellate jurisdiction only could exercise it before the tribunal from which the cause comes for review had decided it; and the Constitution ought to be read in the light of former decisions.

The Constitution of the Republic conferred on the Supreme Court appellate jurisdiction only, and the same is true of every one of the Constitutions of the State; and, under all of them, it has been steadily held that the Supreme Court could not take jurisdiction of any cause until a judgment final in its nature had been rendered by the court from which the appeal was prosecuted.

On December 22, 1836, a law was passed which prescribed, that " the judge of any District Court may at his discretion, in any criminal case, reserve a question of law, which to him may appear novel or difficult, for the consideration and discretion of the Supreme Court at the next succeeding term, and the Supreme Court shall pronounce such sentence or judgment as the District Court ought to have pronounced."

Two cases arose under this statute in which the opinion of the Supreme Court was sought, wherein there were no final judgments, and in both the court declined to take jurisdiction. The Republic v. Laughlin, Dallam, 412; Nash v. The Republic, Dallam, 631.

In the case last cited it was said, that " the Constitution having declared that the jurisdiction of the Supreme Court shall be appellate only, we are limited to the review of the adjudications of inferior tribunals, and until their decisions are made no subject matter arises on which the revisory power of this court can be exerted.    *    *    *    It is therefore ordered that the case be dismissed for want of jurisdiction."

If there had been final judgment the procedure would have been deemed only as an additional mode of bringing the case before the court; but the decision has been at all times that the appellate court can not act un-

til the court whose decision it has power to review has made a decision. Robinson v. Baillieul, 2 Texas, 160; Ewing v. Kinnard, 2 Texas, 164; Dow v. Hotchkiss, 2 Texas, 471; Phillips v. Hill, 3 Texas, 400; Warren v. Shuman, 5 Texas, 450; Gross v. McClaran, 8 Texas, 341; Stewart v. Jones, 9 Texas, 469; Little v. Morris, 10 Texas, 263; Martin v. Crow, 28 Texas, 613; Green v. Banks, 24 Texas, 522; Moore v. Schooner Anna Maria, 11 Texas, 655; Wampler v. Walker, 28 Texas, 599; Rodrigues v. Trevino, 54 Texas, 201; Linn v. Arambould, 55 Texas, 619; Railway v. Smith County, 58 Texas, 76; Milliken v. Smoot, 64 Texas, 171; Lumber Co. v. Williams, 71 Texas, 451.

This is believed to be the universal rule, except as it may be departed from in cases in which appeals are allowed from interlocutory judgments, or in cases in which the exercise of jurisdiction becomes necessary to enable the appellate court to exercise jurisdiction conferred on it. It is the rule recognized and enforced in the Supreme Court of the United States, although there may be a seeming departure from it in questions certified from a Circuit Court when the judges were opposed in opinion. This will be noticed hereafter.

The recent amendment to the Constitution specified the cases in which this court should exercise its appellate jurisdiction, as follows: "Until otherwise provided by law, the appellate jurisdiction of the Supreme Court shall extend to questions of law arising in the cases in the Courts of Civil Appeals in which the judges of any Court of Civil Appeals may disagree, or where the several Courts of Civil Appeals may hold differently on the same question of law, or where a statute of the State is held void."

It is submitted, that in each of the enumerated cases a decision of a Court of Civil Appeals was contemplated as the foundation on which the jurisdiction of this court should rest. Where a statute of the State was held void, this necessarily involved a decision by a Court of Civil Appeals, for without this there could be no holding by one of those courts that a statute of the State was void.

The several Courts of Civil Appeals could not hold differently on the same question of law if at least two of them had not made decisions on the same question of law.

By cases in the Courts of Civil Appeals in which the judges of any Court of Civil Appeals may disagree, I understand to have been meant cases in which there might be dissent or want of unanimity among the judges, but notwithstanding this a decision determining the right of the parties.

This seems to have been the construction put on this part of the Constitution by the Legislature; for in the act approved April 13, 1892, in determining in what cases writs of error might be granted when judgments were reversed and a cause remanded by a Court of Civil Appeals, it was provided, that the writs might issue and this court review the action of

the Court of Civil Appeals in "cases in which the judges of any Court of Civil Appeals may diagree."

That the word "disagree" as here used meant nothing more than a want of unanimity among the judges, which is usually induced by dissent, is evident, for the law contemplates that there shall have been a judgment rendered by which the judgment of the trial court is reversed and the cause remanded.

This could not occur if the *disagreement* contemplated was such that no two of the judges could agree upon a judgment.

For more than half a century the Supreme Court of this State has been composed of three judges, and no cause is now remembered in which at least two of the judges were not able to agree upon a judgment; and it ought not to be presumed that the clause of the Constitution before referred to was intended to meet a difficulty never found to exist for so long a period.

It must be remembered that this court has no jurisdiction advisory in character, and that to it is not given any general supervision or control over Courts of Civil Appeals.

On the question, whether the Legislature had power to enact the law relied upon, courts ought to look to the fact that through such a power the Legislature would be enabled practically to destroy some of the most important courts created by the Constitution; and it never ought to be held that such a power exists in the Legislature, unless it clearly appears to have been conferred by the Constitution.

A power in one department to destroy another, in whole or in part, would be anomalous.

It ought not to be contended, because power to review judgments of District and County Courts involves the exercise of appellate jurisdiction, that for this reason this court has jurisdiction of the questions certified;. for, as before stated, jurisdiction to review the judgments of these trial courts, whether rendered in the exercise of their original or appellate jurisdictions, is expressly conferred on Courts of Civil Appeals, while the appellate jurisdiction conferred on this court gives power only to review judgments of Courts of Civil Appeals.

Those courts, as well as this, have and must exercise appellate jurisdiction, because it was conferred to be used and not to be surrendered; and although the power of each may at different stages of the litigation operate on the same controversy, their jurisdictions are distinct; and from the nature of judicial power, while jurisdiction in a particular cause is possessed by the one, the other can not lawfully act, because the litigation on the one hand has not reached that point at which the jurisdiction of this court can attach; and on the other has passed that point at which was exhausted the power of a Court of Civil Appeals to hear and determine.

It can not, with plausibility, be contended that this court has and may

exercise appellate jurisdiction in any case pending before a Court of Civil Appeals in which there is a question of law, even though those courts may consent to or invite the exercise of such jurisdiction; for if this were true, this court, without a law, would have or could acquire jurisdiction over any case pending before Courts of Civil Appeals; for there is no cause in which there does not exist a question of law.

It may not be a doubtful or controverted question, but in the nature of things it must exist, for the application of some rule of law is necessary to the determination of every right. Courts have no power to confer upon themselves or upon other courts any jurisdiction whatever—that must come through a law.

It is equally true that the Legislature has not power to confer upon this court appellate jurisdiction over any case pending in the Courts of Civil Appeals in which there exists a question of law, prior to a decision of the cause by the court having jurisdiction over it under the terms of the Constitution; for the existence of such a power in the Legislature would give to that department the power to take from those courts the jurisdiction conferred upon them by the Constitution.

Such a power is a power to destroy, and it will not be insisted that the Legislature may, in effect, destroy a court created by the Constitution. The Constitution gives jurisdiction to Courts of Civil Appeals, and commands the Legislature to organize so many of them, from time to time, as may be found necessary for the prompt dispatch of the business over which they are given jurisdiction; and if the Legislature may require or authorize them to refer all questions of law existing in causes before them to this court for decision, in the first instance of the exercise of appellate power, and to require those courts to register the decision of this as the rule of right, then the Legislature has power to take from them or to authorize them to surrender the power to hear and determine causes which the Constitution declares they shall hear and determine. That the Legislature has no power to do either is too clear for controversy.

To this it may be replied, that the Legislature has neither directed nor authorized these courts to refer to this court for decision all questions of law existing in cases of which they have jurisdiction, but has only empowered them to certify to this court for decision such questions of law as they may deem novel or of first impression; but it will at once be seen that this involves the same character of power that would be necessary to require every cause in which a question of law exists to be referred.

The difference is in the degree of power exercised, and not in the nature of the power.

If the Legislature has power to select one or more classes of questions of law, or to authorize those courts to select them, and then to transfer them to this court for decision, then it has power to authorize them to

send all cases to this court for decision on questions of law, or to command the courts to send them here for decision.

Jurisdiction is not given to this court over a cause or question in a cause pending in a Court of Civil Appeals whenever there may be a question of law involved in it, but it is given to review questions of law "*arising in cases* of which the Courts of Civil Appeals have appellate jurisdiction, under such restrictions and regulations as the Legislature may prescribe."

When can it be said that a question of law *arises* in a case in a Court of Civil Appeals?

As the mere existence of a question of law in a case pending before a Court of Civil Appeals will not confer jurisdiction on this court, such a question must, within the meaning of the Constitution, be said to arise in a case in a Court of Civil Appeals whenever it decides a cause and has applied or refused to apply a rule of law to the facts found to exist.

Then, and not before, does the question of law *arise;* and when this occurs, and the necessary steps are taken to confer on this court jurisdiction in the particular case, then, and not before, does it become the duty of this court and within the lawful power of this court to decide whether the Court of Civil Appeals properly applied the law to the facts; and in the nature of things this can not be determined until that court has made a decision—has heard and determined the right of the parties.

As before said, a final judgment or decree is essential to the exercise of its ordinary appellate jurisdiction by the Supreme Court of the United States, and no appeal will lie until such a decree has been rendered by a subordinate court, nor will a writ of error lie until such a court has rendered a judgment final in its nature.    Ins. Co. v. Adams, 9 Pet., 602; United States v. Bailey, 9 Pet., 272; Bostwick v. Brinkerhoff, 106 U. S., 3; Grant v. Ins. Co., 106 U. S., 430; Ex Parte Tom Long, 108 U. S., 556; Evans v. Gee, 14 Pet., 2; Carr v. Hoxie, 13 Pet., 460; U. S. Rev. Stats., arts. 692, 693.

That under the Act of Congress of April 29, 1802, the Supreme Court of the United States has many times exercised jurisdiction over questions certified from Circuit Courts before final decisions or judgments were rendered, is true, and this is relied upon as authority for sustaining jurisdiction on the certificate now before us.

The act of Congress referred to provided, that a Circuit Court, at the request of either party, might certify to the Supreme Court a question of law existing in a cause in reference to which the judges of the Circuit Court might be opposed in opinion; that the Supreme Court should decide the question of law thus certified, and that its decision of the question should govern the Circuit Court in its subsequent disposition of the cause.

The causes from which questions could be certified are such as the

Circuit Courts had original jurisdiction over, and are not causes over which such courts had appellate jurisdiction; for the same act provided, that in causes brought into Circuit Courts by appeal or writ of error judgment should be rendered in conformity to the opinion of the judge of the Supreme Court who sat with a district judge to hold the Circuit Court, while there was no such provision applicable to cases of which Circuit Courts had original jurisdiction.

In the class of cases last referred to, the necessity for some other court to decide the question of law resulted from the fact that the court was composed of only two judges, and their concurrence in opinion was necessary for the decision of a cause.

Under that statute jurisdiction was repeatedly exercised by the Supreme Court, and questions were decided in causes over which that court, under the Constitution, could have none other than appellate jurisdiction; but no direct statement is found of the theory on which the decision of an undecided question of law found in a cause pending in a Circuit Court, and over which it had only original jurisdiction, was held to be the exercise of appellate jurisdiction. This may, however, be deduced from the decisions made on certified questions and on kindred jurisdictional questions.

It was steadily held that, under the statute referred to, an entire cause could not be thus certified, because to decide an entire cause before a decision by the Circuit Court would be to exercise an original and not an appellate jurisdiction. United States v. Bailey, 9 Pet., 272; Webster v. Cooper, 10 How., 55; White v. Turk, 12 Pet., 239; Waterville v. Van Slyke, 116 U. S., 702; Daniel v. Railway, 3 Wall., 256; Paving Co. v. Molitor, 113 U. S., 616; Bank v. Knapp, 119 U. S., 360; Jewell v. Knight, 123 U. S., 433.

In Webster v. Cooper the whole case was certified, and in disposing of the matter it was said: " This court has frequently said, that this practice is irregular, and could, if sanctioned, convert this court into one of original jurisdiction in questions of law, instead of being, as the Constitution intended it to be, an appellate court to review the decisions of inferior tribunals. Indeed, it would impose upon it the duty of deciding in the first instance not only the questions of law which properly belonged to the case, but also questions merely hypothetical and speculative, and which might or might not arise, as previous questions were ruled the one way or the other."

The line which divides appellate from original jurisdiction in these cases is correctly applied; for in the nature of things there is nothing for appellate jurisdiction to act upon until some court having original jurisdiction has decided the right of the parties, unless it be in that class of cases in which the appellate court may be compelled to do some act not appel-

late in character, but for the fact that the act is necessary for the protecton or exercise of the appellate jurisdiction possessed.

The line between the power of an appellate court to decide any question in an undecided case pending before a court of original jurisdiction, and the power to decide a single question of law necessary to the decision of that cause, while it is pending before the court of original jurisdiction, is shadowy; but the inference to be drawn from the decisions of the Supreme Court of the United States is, that the jurisdiction to decide the questions of law certified becomes appellate jurisdiction whenever such decision becomes necessary to a final judgment through which its ordinary appellate jurisdiction may be made to attach.

In the case of Marbury v. Madison, 1 Cranch, 68, an application was made to the Supreme Court of the United States for mandamus to compel the Secretary of State to deliver commissions signed by an outgoing president, which were not delivered.

The court refused to grant the relief asked, on the ground that it had no original jurisdiction to do so, and on the further ground that the matter did not come within the appellate jurisdiction of the court.

The court, however, in the opinion recognized the fact, that if the power in question was one necessary to be recognized to enable the court to exercise the appellate jurisdiction conferred, the power necessary to this end would be appellate power.

In disposing of the question the court said: "To enable this court, then, to issue a mandamus, it must be shown to be an exercise of appellate jurisdiction, *or to be necessary to enable them to exercise appellate jurisdiction.* It has been stated at the bar, that the appellate jurisdiction may be exercised in a variety of forms, and that if it be the will of the Legislature that a mandamus should be used for that purpose, that will must be obeyed. This is true, yet the jurisdiction must be appellate, not original. It is the essential criterion of appellate jurisdiction, that it revises and corrects the proceedings in a cause already instituted, and does not create that case. Although, therefore, a mandamus may be directed to courts, yet to issue such a writ to an officer for the delivery of a paper is, in effect, the same as to sustain an original action for that paper, and therefore seems not to belong to appellate but to original jurisdiction. Neither is it necessary in such a case as this *to enable the court to exercise its appellate jurisdiction.*"

In Ex Parte Crane, 5 Peters, 189, it was held, that the Supreme Court of the United States, in the exercise of its appellate jurisdiction, had power to compel, by mandamus, a Circuit Court to sign a bill of exceptions in a cause tried before them.

The decision was evidently based on the proposition, that the court had jurisdiction to have the record of the Circuit Court made to show just what occurred on the trial, and that the Supreme Court might have be-

fore it for revision the proceedings as they actually occurred, without which the appellate jurisdiction could not be properly exercised.

The opinion of the court was by Chief Justice Marshall, and there was a vigorous dissent by Justice Baldwin, with whom concurred Justice Johnson, those holding that the issuing of the writ was not the exercise of appellate jurisdiction, and that such jurisdiction could only be exercised after final judgment, on appeal or writ of error; conceding, however, that if the purpose of the writ had been to compel the removal of the cause to the Supreme Court for revision of the judgment of the Circuit Court, that this would have been the exercise of appellate power.

In Ex Parte Bradstreet, 7 Peters, 634, it appeared that a District Court of the United States had dismissed an action on the ground that the pleadings did not show a cause within the jurisdiction of the court; but on application to the Supreme Court for mandamus to compel the court to reinstate the cause, permit amendments, and try it, it was held, that the court would not control the question of amendment, but that under the pleadings jurisdiction might be shown, and writ of mandamus was granted commanding the reinstatement and trial of the cause.

The ground given for the exercise of such a jurisdiction was, that it was necessary to enable the complainant to bring his case before the Supreme Court, that they might adjudicate his right after it had been passed upon by the trial court.

In Insurance Company v. Heirs of Wilson, 8 Peters, 291, it appeared that a judge of the United States District Court for Louisiana refused to sign the record of a judgment rendered in a cause by his predecessor in office.

Under the law regulating the court the judgment was not deemed final and could not be enforced until the record was signed by the judge, and application was made to the Supreme Court for mandamus to compel the judge to sign the record.

The writ was awarded in the exercise of the appellate jurisdiction of the court, and in the opinion it was said: " Without the action of the judge the plaintiffs can take no step unless it be the one they have taken in this case. They can neither issue execution on the judgment nor revise the proceedings by writ of error. And if the reason assigned by the judge shall be deemed a sufficient answer to the rule, the plaintiffs are without remedy on their judgment."

These cases all show that the Supreme Court of the United States have ever regarded any act done by them, looking to the enforcement of the rendition of a final judgment by a court whose judgment they have power to revise, or to the making up of the record of such a court so that it may fairly represent the proceedings had in a cause, as the exercise of appellate jurisdiction; and so, simply because unless such a power rests in that court its appellate jurisdiction may be defeated.

The same rule has been, to some extent, recognized in this State. Kleiber v. McManus, 66 Texas, 49; Schultze v. McLeary, 73 Texas, 92.

On what ground, in the light of the decisions referred to, ought it to be held that the Supreme Court of the United States exercised appellate power in the decision of questions certified under the act of Congress before referred to?

It is submitted that there can be no other ground than that it was necessary such jurisdiction should be exercised to enable the court to exercise the appellate jurisdiction conferred by the Constitution.

The Circuit Courts could render no judgments when the judges disagreed, for there were but two judges, and their right to decide equal; and the necessity for a final judgment as the basis for a revision by that court was evidently the ground on which the appellate jurisdiction of the Supreme Court was based.

The reasoning through which such a result may have been reached may not be satisfactory to all minds, but on what other ground can the decisions be based?

Under the organization of the Courts of Civil Appeals no necessity arises for a decision by this court in the first instance of the questions certified to this court.

If the ground suggested be not that on which the Supreme Court of the United States exercise appellate jurisdiction on questions certified, and it be true that the holding was broadly that appellate jurisdiction existed without reference to the necessity for its exercise to secure a judgment final in its nature, which the court would have power to revise, then the inquiry arises, whether this court should follow the decisions of that court or decisions made by the Supreme Court of the Republic, recognized by the Supreme Court of this State, on the same question. Phillips v. Hill, 3 Texas, 398.

I deem it my duty to follow the latter, not only because the decisions made under the Constitution of the Republic were made upon an article of a Constitution in all material respects the same as that now in force here and operative in this State, and may therefore be supposed to have been looked to as furnishing a rule of interpretation or construction, but also because I believe the rule announced by the Supreme Court of the Republic to be the only correct one to be applied to the matter now before this court.

I think the certificate should be dismissed; but as a majority of the court hold that jurisdiction exists, I concur in the decision made on the questions certified.

ON MOTION FOR REHEARING.

GAINES, Associate Justice.—We are of opinion that this motion should be overruled. We see no good reason to change or modify our former opinion upon the questions presented.

Counsel for appellee, however, insist, in effect, that we were in error, because the invalidity of the whole of the contracts in controversy was not put in issue by the pleadings, and because if invalid they may have been subsequently ratified by the subscribers. But these are not matters for our consideration. When questions of law are referred by the Court of Civil Appeals directly to this court for determination, in the first instance, we have no power to pass upon any questions except those submitted. We can not inquire into their bearing upon the ultimate determination of the case. The statute does not direct that the transcript shall be sent to this court; nor have we the power to so order. Hence we are without the means of entering into any collateral questions of the character of those presented in the motion for a rehearing, and they must be determined by the Court of Civil Appeals. Our decision of the naked questions presented does not necessarily determine the case.

The motion for a rehearing is overruled.

*Motion overruled.*

Delivered June 15, 1893.

Associate Justice BROWN did not sit in this case.