**MEISSNER v. PAPAS (two cases).**

**Nos. 7639, 7640.**

Circuit Court of Appeals, Seventh Circuit.

Dec. 1, 1941.

---

James E. Coleman and John B. Frisch, both of Milwaukee, Wis., for appellant.

Eugene J. Sullivan, of Milwaukee, Wis., for appellee.

Before EVANS, SPARKS, and MAJOR, Circuit Judges.

MAJOR, Circuit Judge.

These are appeals from two judgments awarding damages as a result of an automobile collision between cars driven by the plaintiff and the defendant. In No. 7639, the plaintiff recovered for personal injuries, and property damage to his car. In 7640, plaintiff, as administrator of the estate of his wife, Elizabeth Meissner, deceased, recovered: (1) for pain and suffering of the deceased during her lifetime, (2) for pecuniary loss under the death statute, and also for loss of society and companionship, and (3) for funeral expenses. The cases, dependent upon the same state of facts, were consolidated for trial.

The collision occurred about 1:30 P. M., July 23, 1937, at the intersection of Oak Wood Road and United States Highway 41 in Milwaukee County, Wisconsin. At that point, Oak Wood Road extends east

and west, and Highway 41, north and south. The latter has been designated as an arterial highway and has four lanes for travel, two for northbound and two for southbound. The north and south lanes of travel are each 20 feet wide and of concrete construction. They are separated by a parkway in the center which is 50 feet wide. Each lane of travel is divided by a black line in the center. At the intersection of these highways there is a concrete crossover 40 feet wide, connecting the north and south lanes of travel. Located at the southeast corner of the intersection and about 150 feet east of the concrete portion of Highway 41 is a church. About the church and along Oak Wood Road is a parking lot. Located at the northeast corner of the intersection is a tavern. The topography of the land at and about the intersection is substantially level.

On the date of the collision, plaintiff and his wife, in an automobile driven by plaintiff, left their home at a point north of this intersection for the purpose of attending a funeral at the church. In making the trip, they drove south on Highway 41 in the lane for southbound traffic until arriving at the intersection, when they turned to the left and traveled east on the crossover and, partially or entirely, across the lane for northbound traffic where the collision occurred. At that time, defendant, twenty years of age, accompanied by a friend, was driving a Ford automobile north on Highway 41. He was making a trip from Wilmette, Illinois, to Green Lake, Wisconsin, where his father owned a summer cottage.

The dispute as to what happened at and prior to the time of the collision is not as marked as is usually found in a case of this character. As it is not within our province to review the facts, it is only important to relate them as they may be material to the legal questions presented. According to plaintiff's version, he stopped before attempting to cross the lane for northbound traffic and looked in both directions for approaching cars. He saw two cars approaching from the south (his right) and thought that the first was 400 to 500 feet south of the intersection, and the second about 1000 feet south—the latter traveling on the west side of the northbound lane. He estimated the speed of the latter at 35 miles per hour and, concluding that he had ample time, proceeded to cross. According to his version, he cleared

the concrete portion of the highway, with the rear of his automobile about 10 feet from the east edge thereof, and stopped on account of a car, in front of him, which was parking on the north side of Oak Wood Road. While thus stopped, defendant's automobile, traveling north, collided with the right side of plaintiff's car, causing the damages complained of.

Defendant testified that he was driving 50 to 55 miles per hour until he reached a point 400 feet south of the intersection where there was located a crossing sign and, at that point, he took his foot off of the accelerator and gently applied his brake. He did not know how far he was from the intersection when he first saw plaintiff's car, but when 200 feet from the intersection, plaintiff was starting to cross the northbound lane. At that time defendant was traveling 40 miles per hour and "jammed" on his brakes, and with the brakes on, his car skidded 120 feet to the point of collision. As to the collision itself, he stated: "My car side-swiped or struck Mr. Meissner's car. I am of the opinion that it was on the pavement. It may have been on the corner of the pavement, on the east lane of the northbound traffic. My left front part hit his right front door and in that way we collided."

He stated that plaintiff's car did not stop before crossing the lane for northbound traffic. Also, that he was traveling at all times on the east side of the northbound lane and saw no other car on the highway at or near the intersection.

The witness Werner testified that he was traveling north on Highway 41 on his way to the funeral. Through his rear-view mirror he saw defendant's car approaching—that it passed him about 200 feet south of the intersection. He did not know its speed, but stated "they went awful fast." A deputy sheriff, at the scene of the collision within a few minutes, made observations and took certain measurements. He fixed the point of collision at a place on the gravel part of the Oak Wood Road east of Highway 41. He stated: "The Papas car showed 120 feet of skid marks on the east lane, north-bound lane, of Highway 41, south of the south line of the Oak Wood Road. And then from that line the skid marks went into the gravel on the Oak Wood Road in a northerly direction 20 feet and from the point of impact there was another 10 feet into the side of the road. After the cars collid-

ed they went 10 feet in a northerly direction."

The day was clear, with nothing to obstruct the view of either plaintiff or defendant as they approached the intersection. There were many cars parked in and around the church and on each side of Oak Wood Road east of the intersection. There was no sign along the highway warning motorists approaching the intersection as to speed.

In response to interrogatories, the jury found the defendant negligent in the following particulars: (a) speed, (b) lookout, (c) management and control of his automobile, and (d) failure to give signal, and that the collision was the natural result of such negligence. In response to interrogatories concerning the plaintiff's negligence, the jury found in his favor on all issues, except he was found negligent "in failing to yield the right-of-way." All interrogatories concerning negligence on the part of plaintiff's wife were answered in her favor.

The contested issues, as presented by the defendant, are (1) there is no evidence of any actionable negligence on the part of the defendant and the court erred in a refusal to direct a verdict and in denying defendant's motion for judgment, notwithstanding the verdict, (2) that the finding of the jury of the causal negligence of the plaintiff in failing to yield the right-of-way was greater than any negligence of the defendant, which, under the Comparative Negligence Act of Wisconsin, bars recovery, and (3) in the case of plaintiff as administrator, the amount of recovery should have been diminished by the amount of negligence attributable to the plaintiff in the same proportion as such negligence bears to the total amount of damages.

■ The gist of defendant's argument that he was not negligent is predicated largely upon the assumption that when he first discovered plaintiff's car, his rate of speed was 40 miles per hour. In this connection it is pointed out that there was no law fixing defendant's rate of speed, and that the highway having been designated an arterial highway, he had a right to assume that plaintiff would stop and yield the right-of-way. A number of cases are cited, decided by the Supreme Court of Wisconsin, as authorities for defendant's contention that he was not negligent, as a matter of law. We have examined these authorities and we do not think they are applicable for the reason that defendant's position is based upon the false premise that the jury was bound to believe defendant's car was traveling at the rate of speed as testified to by him. The physical facts, however, speak more forcibly than the words of the witness. There is no dispute or explanation of the positive testimony that defendant's car skidded 120 feet on the dry, concrete pavement, and 20 feet further on the gravel shoulder and collided with plaintiff's car with sufficient momentum to cause the damage complained of. There is no evidence in the record as to the speed indicated by such a situation, but we think it is a matter of common, if not universal, knowledge that it discloses a rate far in excess of 40 miles per hour, and that a jury would be justified in so concluding. In fact, under the circumstances of the instant case, we are of the view that the jury might well have concluded that defendant's speed was such as to be dangerous and reckless. In this connection it is pertinent to observe that according to the defendant's testimony, he traveled continuously on the east side of the concrete without seeing or passing another car. The record discloses, however, to a certainty we think, that he passed the Werner car a short distance south of the intersection. We conclude that the finding of negligent speed is amply supported. The other acts of negligence found were proper jury questions and we find no occasion to discuss or disturb them. While the law fixes no certain speed limit under the circumstances of the instant case, the Wisconsin Statute, Sec. 85.40, 1937, provides that the rate shall not be such as to "* * * be likely to endanger the property, life, or limb of any person, or without due regard to the traffic, surface, width of the highway, and any other condition of whatever nature then existing."

■ It is also argued by the defendant that he had a right to assume plaintiff would stop and yield the right-of-way, and that by plaintiff's failure to do so, an emergency situation was created, and for that reason defendant would not be liable as a matter of law. A number of Wisconsin cases are cited in support of this contention. An examination of such authorities, however, generally reveals a state of facts where the plaintiff suddenly turned into defendant's path. In the instant case, assuming that plaintiff failed to yield the right-of-way, we do not think the defend-

ant would have been confronted with an emergency had he been in the exercise of ordinary care. According to his own version, he was 200 feet from the intersection when he first became aware that plaintiff was starting across. The jury was justified in concluding that even then the defendant could, by the exercise of ordinary care, have avoided the collision. We are satisfied that if any emergency existed, it was the result of defendant's acts rather than those of the plaintiff.

Complaint is made of a certain portion of the court's charge to the jury. The jury was told that a driver is obliged to use ordinary care at all times and that he should have his car under such control and management " * * * so that he can reduce its speed and bring the automobile to a stop if it becomes necessary in order to avoid a collision." Abstractly, this, no doubt, places a greater burden upon the defendant than the law requires. We are of the opinion, however, that it did not affect the jury's verdict for the reason pointed out heretofore, that defendant could, by the exercise of ordinary care, have brought his car to a stop in time to avoid the collision. Furthermore, no exception was taken to the court's charge at the trial and it is complained of here for the first time.

Defendant also argues that the plaintiff's negligence was the sole cause of the collision, or, at any rate, exceeded any negligence of the defendant. This argument is based upon the theory that plaintiff failed to form a reasonable judgment before crossing the highway, constituting such negligence as to bar recovery. A reading of the testimony is convincing that this contention is without merit except for the fact that the jury found the plaintiff negligent with respect to his failure to yield the right-of-way. Plaintiff's testimony that his car was off the concrete pavement on the gravel portion of the road is strongly corroborated by the physical facts as testified to by the deputy sheriff. Defendant himself was not certain as to the location of plaintiff's car at the time of the collision and thought it might have been at the east edge of the east lane. It appears plausible that the jury failed to distinguish between the concrete portion of the intersection and all that was included in the right-of-way intersection. The court instructed the jury that the highway intersection was bounded by the outer lines extending across each other and that by outer lines was meant those dividing the right-of-way from the adjoining property. With that definition in mind, the jury might reasonably have concluded that plaintiff, even though off the concrete, was within the intersection. If the jury intended to find that plaintiff's car was on the concrete portion of the highway at the time of the collision, then such finding is not supported by the evidence, having due regard for the physical facts. At any rate, we do not think it can be said, as a matter of law, that plaintiff's negligence, if any, was the proximate cause of the collision. As already pointed out, defendant, with full knowledge of the situation, had ample opportunity to avoid the collision by the exercise of ordinary care. Plaintiff's conclusion that he had ample time to cross the highway in safety was not unreasonable. If the defendant, as contended, had a right to assume plaintiff would not proceed across the highway, we think plaintiff also had a right to assume that defendant would not approach the intersection at a high and dangerous rate of speed. At any rate, this assumption is of little benefit to the defendant in view of the fact that the jury was warranted in concluding the collision could have been avoided by the exercise of ordinary care on the part of the defendant after knowledge of plaintiff's situation.

Furthermore, we are of the opinion that defendant is in a poor position to take advantage of a finding which is more favorable to him than the' circumstances justify. Plaintiff is the one who might well complain of this unfavorable finding, rather than the defendant. We are of the view that there is nothing in this finding, under the circumstances of the case, which requires a reversal.

The amount awarded plaintiff as administrator in No. 7640, for pecuniary loss, was $800, and the amount for loss of society, $2,000. It is contended that the court erred in failing to reduce these amounts by 20%, which the jury found was the proportion of negligence contributed by the plaintiff. This contention is predicated upon Sec. 331.045, Wisconsin Statutes (1937), which provides in substance that damages allowed under the circumstances of the instant case shall be diminished in proportion to the amount of negligence attributable to the person recovering. Plaintiff makes a rather feeble

response to this contention—in fact, tacitly concedes that it is sound. We are of the opinion that it should be sustained and the amounts awarded reduced accordingly.

The judgment of the court will be affirmed, provided the appellee, within twenty days of the date of the announcement of this opinion files with the clerk of this court, a consent in writing that the judgment be reduced by the sum of $560. If the appellee does not file such remittitur within said twenty days, the judgment will be reversed with directions to the District Court to proceed in accordance with the views set forth in this opinion.