**AKERS v. EPPERSON et al.**

No. 11168.

Court of Civil Appeals of Texas.
San Antonio.

April 29, 1942.

Dissenting opinion Filed Aug. 5, 1942.

On Motion for Rehearing Nov. 18, 1942.

Rehearing Denied June 9, 1943.

Moursund, Ball, Moursund & Bergstrom, of San Antonio, for appellant.

Johnson & Rogers, of San Antonio, for appellees.

MURRAY, Justice.

This suit was instituted by Roy Akers against Mrs. R. J. Epperson and her husband, R. J. Epperson, seeking to recover the sum of $1,000 as damages alleged to have been sustained when an ambulance owned by Akers and a Dodge passenger car operated by Mrs. Epperson collided in the City of San Antonio, near the intersection of San Pedro and Park Avenues.

The trial was to a jury who found by their verdict that Mrs. Epperson was guilty of negligence, which was a proximate cause of the collision, and, likewise, that J. P. Riley, operator of the ambulance, was guilty of negligence, which was a proximate cause of the collision. Upon this special issue verdict the trial court entered judgment denying Akers any recovery, from which judgment he has prosecuted this appeal.

■■ Appellant's first nine points present the contention that there was either no evidence or insufficient evidence to support the finding of the jury to the effect that the ambulance was being operated at a negligent rate of speed, and that such negligence was a proximate cause of the collision. We are of the opinion that the evidence is sufficient to support both the finding as to negligent and unlawful rate of speed and as to proximate cause. Riley, the operator of the ambulance, testified that he was traveling at a rate of speed from twenty to twenty-five miles per hour. There was also evidence that the ambulance, in coming to a stop, made skid marks on the pavement twenty-six to twenty-eight feet long. It was a warm day; the pavement was dry. Skid marks made by a motor vehicle in coming to a stop are evidence of the speed the vehicle was traveling at the time. Blashfield's Cyclopedia of Automobile Law and Practice, Perm.Ed., vol. 9, part 2, § 6233; Stamper v. Scholtz, Tex. Civ.App., 29 S.W.2d 883; Meissner v. Papas, 7 Cir., 124 F.2d 720.

■ Whether or not the negligent rate of speed was a proximate cause of the collision was a question of fact for the jury under all the circumstances. Appellant contends that in view of the fact that Mrs. Epperson suddenly lost control of her car, causing it to turn to the wrong side of the road in front of the on-coming ambulance, and then recovered enough to turn the car almost head on into the ambulance, all of which was unforeseen by the driver of the ambulance, and, therefore, the speed of the ambulance could not have been a proximate cause of the collision. It was the duty of the jury to weigh all the surrounding facts and circumstances, and, having done so, and arrived at the conclusion that the speed of the ambulance was a proximate cause of the collision, we are bound by their verdict. 38 American Jurisprudence p. 1056, § 351.

■ It is not required that the driver of the ambulance should have foreseen that this particular accident would happen in the exact manner that it did happen. All that is required is "that the injury be of such a general character as might reasonably have been anticipated; and that the injured party should be so situated with relation to the wrongful act that injury to him or to one similarly situated might reasonably have been foreseen." Missouri-Kansas-Texas R. Co. v. McLain, 133 Tex. 484, 126 S.W.2d 474, 476; Carey v. Pure Distributing Corp., 133 Tex. 31, 124 S.W.2d 847.

■ Appellant next contends there was jury misconduct, in that the juror Boswell gave to the jury his opinion that from the skid marks on the pavement the ambulance was going forty miles per hour. Boswell had previously told the jury he was in the filling station and garage business. He had stated that he had been on a great many juries but never one like the case at bar. It is contended that, due to his previous experience as a juror and as a

garage man, his opinion was accepted by the jury as that of an expert upon the subject. No doubt each member of the jury had had a great deal of experience starting, driving and stopping automobiles. The jury was entitled to discuss the evidence and express their opinions of the same. There was nothing improper in Boswell giving his opinion of the evidence properly before the jury, and in stating to his fellow jurors his conclusions from the evidence. Jurors naturally weigh the evidence in the light of their experiences in life and their common knowledge. Blue Diamond Motor Bus Co. v. Hale, Tex. Civ.App., 69 S.W.2d 228.

Neither was there jury misconduct in the Juror C. O. Mattfeldt visiting the scene of the accident during the course of the trial. It seems from the evidence that Mattfeldt had traveled San Pedro Avenue for some seven years, and the intersection of Park Avenue and San Ped-. ro Avenue did not look any different on the occasion that he visited it during the trial than it did on the many other occasions that he had passed it. The collision occurred some time before the trial and there was no evidence of the wreck on the pavement at the time of the trial. The record doesn't show that Mattfeldt saw anything on the occasion complained of, that he had not seen many times before he was accepted as a juror on the case. No injury to appellant is shown. New Court Rule No. 327.

Appellant next complains that the finding of the jury in answer to Special Issue No. 37, to the effect that Riley did not fail to have the ambulance under proper control just prior to and at the time of the collision conflicts with and destroys the finding of the jury in answer to Special Issues Nos. 32 and 34a to the effect that the speed of the ambulance just before the collison was a proximate cause of the collision. We overrule this contention. The decisions are clearly against appellant's contentions. Smith v. Young, Tex.Civ.App., 147 S.W.2d 859; Manlove v. Lavelle, Tex.Civ.App., 235 S.W. 324; Austin v. De George, Tex.Civ.App., 55 S. W.2d 585. Northeast Texas Motor Lines v. Hodges, Tex.Com.App., 158 S.W.2d 487, is not in conflict with the authorities above cited.

Appellees' counter-point is without merit and is overruled.

The judgment is affirmed.

SMITH, Chief Justice (dissenting).

I respectfully dissent from the order of affirmance.

This collision occurred in the 1800 block on sixty-foot-wide San Pedro Avenue, some distance from the business section of the City of San Antonio, at 10:30 on a summer morning. Mrs. Epperson was driving south in a Dodge automobile and appellant's agent, Riley, was driving north in an ambulance, returning a hospital patient to his home. There was no other vehicular traffic in the block at the time. At Mrs. Epperson's side was her five-months-old baby, riding in a baby chair resting on but not attached to the car seat. The Dodge car was equipped with the now familiar gear shift attached to the shaft just under the steering wheel. The knob on this gear shift was of a bright color, such as naturally attracts the attention of infants, as we all well know. Just before reaching a street intersection, and as the car was moving along at twenty to twenty-five miles per hour, the baby suddenly reached for the knob, which caused the baby chair and its occupant to topple towards the dash and the floor of the car. The mother, disregarding all other considerations than what appeared to her to be the most immediate danger to her baby, took both hands from the steering wheel and turned all her attention and energies to an effort to rescue her baby from the impending fall. By this movement she yielded all control of her car, which turned to the left and moved towards a service station on the opposite side of the street. The ambulance driver, unaware of Mrs. Epperson's difficulties and assuming that she was making the turn to go into the service station towards which her car was headed, slowed down somewhat to permit the supposed movement. When she had gotten past the center of the street, Mrs. Epperson, realizing that her car, out of her control, had passed over to the wrong side of the street and across the path of the on-coming ambulance, put her left foot on the brake and grasped the steering wheel with her left hand, while still struggling with her right to rescue her baby. By these maneuvers she suddenly swung her car south and headed it back directly into the path of the approaching ambulance. The result was a head-on collision between the two vehicles. At the time of the impact the ambulance was moving north in about the center of its right side of the street, and the Dodge car was moving south in

about the center of its wrong side. The speed of the Dodge had been slightly reduced, while that of the ambulance had slowed to about five miles per hour. The rebound from the collision was only about one foot. The impact was such as to crush the front end and parts of the ambulance, and throw its sick passenger from his cot to the floor of the vehicle, injuring him. This suit was brought by appellant, Akers, against Mrs. Epperson for damages to the ambulance, which the jury assessed at $500.

The case was submitted upon forty-six special issues, a number of which the jury refused, or at least failed, to answer. In those issues, thus ignored, the jury was asked if Mrs. Epperson was negligent in the commission of or failure to do certain acts each of which the jury found she committed or omitted and which they also found was a proximate cause of the collision. The parties do not here complain of the jury's failure to answer those issues, however.

Appellant's primary contention is that the jury finding that the collision was proximately caused by excessive speed of the ambulance was not supported by, but was against, the great preponderance of the evidence; that that issue of proximate cause wholly lacked the essential element of foreseeability.

The driver of the ambulance whose apparent attitude lacked all the elements of partisanship, testified that he was driving at the normal speed, in such cases, of twenty miles per hour, although admitting on cross-examination that he "might" have been driving as much as twenty-five miles per hour, as the vehicle "could" move at a faster rate than twenty miles per hour. No other witness testified or gave an opinion as to the speed of the ambulance.

Jury findings eliminated the questions of unavoidable accident and discovered peril, and exonerated the ambulance driver from the duties of keeping a better lookout, or better control, or turning to the right or to the left in avoidance of the Epperson car. When all these elements were removed from the case against the ambulance driver, there remained only the stark fact that when the Epperson car was moving safely across the street in the direction of the service station immediately ahead of her and while crossing the path of the approaching ambulance it suddenly changed its course by turning back directly into

the course of the ambulance, thereby violating all known pertinent traffic statutes and ordinances, and bringing about the collision. It is not contended that the collision would have occurred had Mrs. Epperson continued her course across the street. It is inconceivable that a normal person in the ambulance driver's place could reasonably have foreseen that the Epperson car would thus suddenly turn from a safe course, and unlawfully head back down the wrong side of the street and directly into the path of the ambulance, which had then slowed down from the speed of twenty or twenty-five miles to allow Mrs. Epperson to safely continue in her apparent course across the street. The jury finding that the collision was proximately caused by the speed of the ambulance is, in my opinion, under the undisputed facts, irrational and arbitrary, and in such case the courts will look for extraneous influence which might have operated upon the minds of the jury to induce such finding. It is not difficult to discover that influence in this case, as we shall see in considering appellant's contention of misconduct of the jury.

On the hearing of appellant's motion for new trial some of the jurors testified as to the conduct of Juror Boswell during the deliberations of the jury. His own testimony and that of his fellows made it obvious that Juror Boswell is an unusually intelligent and positive, if not domineering character. For example, at the beginning and throughout the jury's deliberations, according to his testimony, he contended to his colleagues that the trial judge's definition of "negligence" meant, "a wilful neglect to do something that an ordinarily prudent person would do." Other jurors disagreed with Boswell on this interpretation of the Court's definition, but Boswell persisted throughout the deliberations, so that at times the controversy grew quite heated, and at one time approached near to personal difficulties. As one result, the jury made written request of the trial judge to elaborate his definition of the term "negligence," which was properly denied, in view of the plain and accurate definition given in the charge. But, however much or vehemently the other jurors may have at first differed with Boswell's definition, his contentions seemed to prevail, at least in part, for, while in answering several issues they found that certain acts of Mrs. Epperson were each a proximate cause of the collision, they refused, or at least failed, to answer specific questions

of whether or not such acts were negligent; for to do so they would be obliged to find her acts were wilfully careless, under Boswell's definition. It is true that none of the parties complain here of Boswell's conduct in this connection, or of the jury's disregard of the issues of the negligence of Mrs. Epperson. But these matters are adverted to as evidence of Juror Boswell's dogmatic attitude and of his obvious domination of the jury.

We come now to the overt acts charged by appellant against Juror Boswell as constituting material misconduct. As stated, the only direct evidence of the speed of the ambulance was the testimony of its driver that when the Epperson car turned across the street in front of the ambulance he was driving at about twenty miles per hour, or possibly twenty-five. The indirect or circumstantial evidence was that the ambulance made skid marks as much as twenty-five to twenty-eight feet; that a car going twenty miles per hour could be brought to a stop within eighteen feet. No witness hazarded any opinion of the speed of the car, based on the skid marks, or from any other hypothesis. But, during the deliberations of the jury Juror Boswell "left the impression" with his colleagues that he was an experienced automobile man, telling them, apparently repeatedly, that he had operated filling stations for years, was a "service station man and mechanic." According to his own testimony concerning his statements to the jury, Boswell was asked and answered:

"A. I stated that in my opinion the vehicle of that particular type, under the evidence introduced here, would be running forty miles an hour, or more.

"Q. You are an automobile mechanic, are you not? A. Service station man and mechanic.

"Q. You run a garage along with a service station? A. Yes, sir.

"Q. Did you relate to the jury that you were a garage man? A. The jury knew that before we went in.

"Q. Did you tell them you were a garage man? A. Sure.

"Q. And it was on the particular discussion of the skid marks in relation to the speed of the vehicle, was it not? A. No, I don't remember stating that at that particular time. I stated my knowledge acquired over a period of twenty years in the operation of vehicles.

"Q. You had had occasion many times to observe skid marks, in your occupation as a mechanic, hadn't you? A. As had all the other members of the jury.

"Q. And you, of course, told the jury that being a garage man and having observed many vehicles, that in your opinion a vehicle that left skid marks twenty-five feet long was proceeding at a speed of forty miles an hour? A. I have no recollection of any such statement.

"Q. Just exactly what did you say, Mr. Boswell? A. As I stated before, I don't remember the exact words I used in support of my argument but I did use my knowledge of an ambulance in the condition that one would be.

"Q. Was there an argument, Mr. Boswell, among the members of the jury in that particular discussion? A. It was discussed, I suppose, by every juror on the jury. That was our purpose in the jury room. * * *

"Q. Mr. Boswell, had you on previous occasions ever observed skid marks left by any vehicle? * * * A. Certainly.

"Q. Did you relate to the jury any of the observations you had made on previous occasions? A. Not on any specific occasion.

"Q. What do you mean by any specific occasion? A. Not any specific case.

"Q. State what you did say. A. I stated that to my knowledge a vehicle of that weight and in that condition (which was not disclosed in the evidence), skidding twenty-eight feet, would be running forty or more miles an hour, and especially when the witness sat here on the witness stand and stated that he did not bring the vehicle to a sudden stop; that he slowed it down; and then when he saw the accident was inevitable he skidded twenty-eight feet. My argument was that the vehicle was running forty or more miles per hour, based entirely on listening." (Emphasis ours.)

Juror Mattfeldt testified in part:

"Q. Do you recall there was evidence in the trial of the case as to the length of the skid marks that were left by the ambulance? A. I recall that evidence.

"Q. Do you recall the evidence showed the skid marks were twenty-five to twenty-eight feet long? A. Correct.

"Q. Was there any discussion in the jury room as to the speed of the ambulance as

shown by the skid marks? A. Yes. There was considerable discussion.

"Q. Do you recall what, if anything, Mr. Boswell said with reference to that? A. That the ambulance must have been going at an excessive rate of speed because of the skid marks.

"Q. Was that Mr. Boswell's statement? A. Yes, sir.

"Q. Did he make any statement as to what his experience had been in dealing with automobiles? A. Well, he was a rather positive individual and he felt certain about that point, that due to the skid marks the ambulance must have been traveling at an excessive rate.

"Q. Did he say anything about what his business was? A. I understood him to say he was the operator of two gasoline stations; he and his brother did.

"Q. Did he say he had had frequent opportunity to notice vehicles? A. That's the impression I got. * * *

"Q. What did Mr. Boswell say? A. I would have to start at the beginning.

"Q. Can you tell us just approximately what he said with reference to the skid marks of the ambulance? A. I think I stated that. That in view of the fact that somebody had testified that the skid marks were about twenty-five feet long, or thereabouts, that *the ambulance must have been traveling at an excessive rate of speed. 'Zooming down the street.'* We didn't use technical language." (Emphasis ours.)

The effect of these excerpts from the record, wholly undenied, is that Juror Boswell testified in the jury room that in his opinion as an expert, in view of testimony that the ambulance left skid marks twenty-eight feet long, the ambulance was moving at an "excessive" speed, "zooming down the street" at a speed of forty miles or more per hour.

In my opinion, without questioning his good faith and sincerity, Juror Boswell's statements to the jury, of facts not testified to, if not directly negatived, in open court, clearly constituted misconduct; and, further, and especially in view of his obvious influence over the jury, that this misconduct probably induced the jury's findings against appellant on the controlling issues relating to the speed of the ambulance.

For these reasons I think the judgment should be reversed and the cause remanded for a new trial.

On Appellant's Motion for Rehearing.

NORVEL, Justice.

■ Appellant has filed a motion for rehearing of his application to certify points of dissent to the Supreme Court. Two questions or, points are suggested in the motion to certify, the first question is one of fact rather than of law and consequently we adhere to our ruling insofar as that question is concerned. Liberty Film Lines v. Porter, 136 Tex. 49, 146 S.W.2d 982, 987; Perry v. Greer, 110 Tex. 549, 221 S.W. 931.

■ The second point suggested, that relating to alleged jury misconduct, does, however, present a question of law. Upon further consideration, it is our conclusion that we are required to certify this question to the Supreme Court.

It is not contended that the opinion of the majority rendered in this case is in conflict with a prior decision of the Court of Civil Appeals or the Supreme Court, nor has this Court deemed it advisable to submit a question to the Supreme Court for adjudication under Rule 461, Texas Rules of Civil Procedure. Neither said Rule 461, nor Rule 462, R.C.P., is here involved. Appellant's motion to certify is based solely upon Rule 463, R.C.P., and the only reason we certify a question to the Supreme Court is that in our opinion we are required to do so by the provisions of said Rule.

It is conceded that this is a case over which we have final jurisdiction and our original refusal to certify a question to the Supreme Court was based upon authority of Herff v. James, 86 Tex. 230, 24 S.W. 396, and cases following that decision. Upon further investigation, we have concluded that because of material changes made in pertinent statutory provisions since the date of those decisions which have to be carried forward into the Rules of Civil Procedure, the holding of Herff v. James is no longer applicable to the situation before us.[1]

---

[1] Appellant in support of his motion suggests a matter heretofore considered by us but not discussed in our former opinion. We therefore briefly notice it here.

Article 1620, Revised Statutes of 1911, relating to certificates of dissent was amended by the 38th Legislature (see page 72, Acts of said Legislature) by adding the following: "The provisions hereof shall apply to cases appealed from county

In that case the Supreme Court was called upon to construe certain provisions of the Act of April 13, 1892, providing for the organization of the Courts of Civil Appeals. 10 Gammel's Laws of Texas 389, Acts 22nd Legislature, 1st Called Session, p. 25.

This Act provided for two forms of certified questions, that is, the certificate of dissent and the "discretionary question" —discretionary in the sense that a Court of Civil Appeals was permitted to certify a question of law to the Supreme Court provided it deemed such course advisable.

Sections 32, 33, 34 and 35 of the original Act, Vernon's Ann.Civ.St. arts. 1852–1854, 1851, are as follows:

"Sec. 32. When any one of said civil courts of appeal shall in any cause or proceeding render a decision in which any one of the judges therein sitting shall dissent as to any conclusions of law material to the decision of the case, said judge shall enter the grounds of his dissent of record, and the said court of civil appeals shall upon motion of the party to the cause, or on its own motion, certify the point or points of dissent to the supreme court.

"Sec. 33. When a certificate of dissent is sent up by any court of civil appeals, it shall be the duty of the clerk to send up a certified copy of the judgment of the court below, with a certified copy of the conclusion of facts and law as found by the court, and the questions of law upon which there is a division, and the original transcript if so ordered by the supreme court; and thereupon, if the supreme court so direct, the clerk shall set down the same for argument and notify the attorneys of record.

"Sec. 34. After the question is decided the supreme court shall immediately notify the court of civil appeals of their decision and the same shall be entered as the judgment of said court of civil appeals.

"Sec. 35. Whenever, in any case pending before the court of civil appeals, of which said court of civil appeals has final jurisdiction, there should arise an issue of law

courts as well as to cases appealed from the district courts." See also Art. 1852, R.C.S. 1925, and Rule 463, R.C.P. Since the article before its amendment referred to "*any cause or proceeding*," the amendment seems tautological in nature. Appellant's argument is necessarily based upon an amendment by implication of Section 1, Article 1591, R.C.S. 1911 (now Art. 1821, Vernon's Ann.Civ.Stats.), which provided that the judgment of the Court of Civil Appeals should be final as to "Any civil case appealed from the county court or from a district court, when, under the Constitution, a county court would have had original or appellate jurisdiction to try it, except in probate matters and in cases involving the revenue laws of the State or the validity * * * of a statute." It, however, appears that the same Legislature that amended Art. 1620, R.C.S. 1911, also amended Section 1 of Art. 1591, R. C.S. 1911 (see Acts 38th Legislature, page 110) by extending the exception contained in said section to cover "cases involving conflicts between decisions of the Courts of civil appeals or between a decision of a court of civil appeals and a decision of the supreme court." Both amending Acts became effective on the same day—ninety days after adjournment of the Legislature. Further, both articles as amended were brought forward into the 1925 Revision without material change as Articles 1821 and 1852, respectively. Section 22 of the Final Title of the 1925 Revised Civil Statutes provides said Revised Statutes "shall be construed to be an Act of the Legislature." It would therefore seem that the circumstances and conditions which led to the holding in Herff v. James, supra, that the sections of the Act relating to certificates of dissent were procedural in nature and did not relate to nor affect the jurisdiction of the Supreme Court, were present in 1923 and also in 1925, although subsequent legislative enactments were involved.

Furthermore, in 1929 Article 1821, R.C. S. 1925, was amended by re-enactment in an amended form, so that a judgment of the Court of Civil Appeals is no longer final in cases of boundary. The provisions of Section 1 of the article were re-enacted without change. Acts 41st Legislature, p. 68, Vernon's Ann.Civ.St. art. 1821.

Upon adoption of the Texas Rules of Civil Procedure, the Supreme Court, in accordance with Section 3 of the Act relinquishing to the Supreme Court full rule-making power in civil judicial proceedings (Acts 46th Legislature, 1939, p. 201, Art. 1731a, Vernon's Ann.Civ.Stats.) listed Article 1852, R.C.S. 1925, as a repealed article. Vernon's Texas Rules of Civil Procedure, page 629. The provisions of the article were adopted as Rule 463, R.C.P. By such action the Supreme Court construed the provisions of the article and of the rule as relating solely to procedural matters and as not relating to the jurisdiction of the Supreme Court—a matter of substantive law. § 3, Article 1731a, Vernon's Ann.Civ. Stats.

that is novel, or presenting a question of first impression to the court, and the court of civil appeals should deem it advisable to present the issue to the supreme court for adjudication, it shall be the duty of the presiding judge of said court to certify the very question to be decided to the supreme court, and during the pendency of the decision by the supreme court the cause in which the issue is raised shall be retained for final adjudication in accordance with the decision of the supreme court upon the issue submitted."

Section 5 of the original act is in part as follows: "The judgment of the courts of civil appeals * * * shall be conclusive on facts and law in the following cases * * *, to-wit: (1) any civil case appealed from a county court or from a district court when under the constitution a county court would have had original or appellate jurisdiction to try it, except in probate matters and in cases involving the revenue laws of the state or the validity of a statute." Vernon's Ann.Civ.St. art. 1821.

In Herff v. James, supra, decided December 7, 1893, the supreme court construed Sections 32, 33 and 34, above quoted, relating to certificates of dissent in relation to Section 5 of the Act which defined the jurisdiction of the courts of civil appeals and came to the conclusion that the supreme court did not have jurisdiction of a certificate of dissent arising in a case over which the jurisdiction of the courts of civil appeals was made final by said Section 5.

However, in Wallis v. Stuart, 92 Tex. 568, 50 S.W. 567, 568, decided in 1899, the Supreme Court directly held that it had jurisdiction to consider a question certified to it in accordance with the provisions of Article 1043, 1895 Revised Statutes, although the question arose in a case over which the jurisdiction of the court of civil appeals was final. The opinion points out

that Article 1043 had its origin in Section 35 of the original act and distinguishes the two types of certified questions provided for by statute. In discussing Herff v. James, the Supreme Court said:

" * * * Since section 34 of the act mentioned (now article 1042 of the Revised Statutes) provided that the decision of this court should 'be entered as the judgment of the court of civil appeals,' it was held that sections 32, 33, and 34, in regard to certificates of dissent, did not apply to cases over which the jurisdiction of the court of civil appeals was final. In other words, the court was of opinion that there was an inconsistency in the two provisions, which should be reconciled by holding that the sections relating to certificates of dissent were not intended to apply to cases which were subject to final determination in the court of civil appeals. The questions before us arise, it is true, in a case in which this court has no power to grant a writ of error; but they are not certified under article 1040 of the Revised Statutes, but under article 1043. The latter article reads as follows: 'Whenever in any case pending before the court of civil appeals there should arise an issue of law which said court should deem it advisable to present to the supreme court for adjudication, it shall be the duty of the presiding judge of said court to certify the very question to be decided by the supreme court, and during the pendency of the decision by the supreme court, the cause in which the issue is raised shall be retained for final adjudication in accordance with the decision of the supreme court upon the issue submitted.' Under this article, the court of civil appeals is required, after the decision of this court upon the question, to enter its own judgment. This is not inconsistent with the finality of its jurisdiction. * * *."[2]

---

[2] At the time the case of Herff v. James was decided, the Supreme Court was composed of Chief Justice Stayton and Associate Justices Gaines and Brown. The opinion was by Stayton, C. J. When Wallis v. Stuart was decided the members of the Court were, Chief Justice Gaines, the author of the opinion, and Associate Justices Brown and Denman.

In April, 1893, while the Court was composed of Stayton, C. J., Gaines and Henry, JJ., the Supreme Court, in Darnell v. Lyon, 85 Tex. 455, 22 S.W. 304, 960, opinion by Judge Gaines, answered a question certified to it by a Court of Civil Appeals,

in accordance with the provisions of Section 35 of the Act of April 13, 1892. Chief Justice Stayton dissented from the majority holding on the ground that the Supreme Court was without jurisdiction to answer the questions by reason of constitutional considerations. In view of this dissenting opinion, it is inferable that Chief Justice Stayton intended to place the decision of Herff v. James upon a somewhat broader basis than that stated by Judge Gaines in Wallis v. Stuart.

Although the difference in the wording of the statutes involved may seem to afford a narrow basis for the distinction pointed

The certification of questions by reason of conflict of decisions was first provided for in 1899. See Acts 26th Legislature, Regular Session, page 170.

These provisions were for the most part carried forward into the Revised Statutes of 1911 and 1925 and are now represented by Rules 462 and 478, R.C.P.

It is well settled by numerous authorities that in case of conflicting decisions a court of civil appeals may be compelled by mandamus to certify a question to the Supreme Court even though the case before it is one in which its decision is made final by statute. McCurdy and Daniels v. Conner, 95 Tex. 246, 66 S.W. 664; Jacobs v. Pleasants, 114 Tex. 242, 267 S.W. 251; 3 Tex.Jur. 315, Sec. 216.

As relating to the Supreme Court's jurisdiction, the only distinction ever drawn between discretionary certifications and certifications because of conflicting decisions on the one hand and certificates of dissent on the other, is that pointed out in Wallis v. Stuart, supra, which is based on the provision that the decision of the Supreme Court "shall be entered as the judgment of said Court of Civil Appeals."

This provision was carried forward from Section 34 of the original Act into the 1895 Revised Statutes as Article 1042, and into the 1911 Revision as Article 1622. It does not appear in the 1925 Revision, and was therefore repealed by Section 2 of the Final Title of the 1925 Revised Civil Statutes.

Apparently the following provision was substituted therefor: "When the Supreme Court decides a question certified to it by a Court of Civil Appeals, such decision shall be binding upon the Court of Civil Appeals." Art. 1854, R.C.S. 1925, now Rule 479, R.C.P.

This rule and Rule 478 taken from the Act of 1899, above mentioned, appear in the Rules of Civil Procedure under Part IV thereof, entitled "Rules of Practice for the Supreme Court" and are apparently applicable to all forms of certified questions.

The wording of Rule 479, either in its present form, or former statutory form, has never been construed to have the same meaning as the now repealed direction that the decision of the Supreme Court shall be entered as the judgment of the Court of Civil Appeals. The same is likewise true of Rule 478.

The authorities which hold that it is the duty of a Court of Civil Appeals to certify a question or questions to the Supreme Court in cases of conflict of decision are now applicable to cases in which a dissenting opinion is filed, provided, of course, that in either instance the question, or point of dissent, arises in a case over which the jurisdiction of the Court of Civil Appeals is final.

For the reasons stated, appellant's motion for rehearing of application to certify points of dissent to the Supreme Court will be granted to the extent here indicated. Our former order will be modified so as to comply with this opinion. The question relating to alleged jury misconduct will be certified to the Supreme Court. Pending disposition of this question by said Court, our order overruling appellant's motion for rehearing will be set aside.

Appellant's motion to certify is granted in part and in part overruled.

## On Motion for Rehearing.

PER CURIAM.

On April 29, 1942, this Court affirmed the judgment of the trial court. On August 5, 1942, while this cause was pending on motion for rehearing, Chief Justice Smith filed a dissenting opinion expressing his views that the evidence was insufficient to support the jury finding that the speed of the ambulance was a proximate cause of the collision, and, further, that the evidence taken on the motion for a new trial showed jury misconduct requiring a reversal of the judgment and a remanding of the cause.

---

out in Wallis v. Stuart, such distinction has been recognized by numerous decisions of the Supreme Court, and must be regarded as well established prior to the passage of the 1925 Revised Civil Statutes. Wilson v. Giraud, 113 Tex. 3, 195 S.W. 848; American Nat. Ins. Co. v. Tabor, 111 Tex. 155, 230 S.W. 397; Gulf, C. & S. F. R. Co. v. Gorman, 112 Tex. 147, 245 S.W.

418; Morrow v. Corbin, 122 Tex. 553, 62 S.W.2d 641, 651. The case last cited contains a discussion of the constitutional considerations involved in the certification of questions, as well as an explanation of the rule of stare decisis as applied to a situation somewhat similar to that here involved.

Thereafter, on November 18, 1942, this Court granted in part appellees' motion to certify the dissent to the Supreme Court. The question of jury misconduct presenting a question of law was certified, while the question of the sufficiency of the evidence to support the jury finding to the effect that the speed of the ambulance proximately caused the collision, presenting only a fact question, was not certified.

On May 19, 1943, the Supreme Court answered the question certified to the effect that the record did not show jury misconduct as a matter of law. See the Supreme Court opinion, 171 S.W.2d 483.

We have this day received the mandate from the Supreme Court and, in keeping with the Supreme Court's answer to the question certified, appellant's motion for a rehearing will be overruled.