DOUGLAS OIL COMPANY ET AL. V. THE STATE OF TEXAS.
(California Case)

No. 6339.   Decided May 13, 1933.
(61 S. W., 2d Series, 807.)

*Frances H. DeGroat*, of Duluth, Minn., *Chas. H. Holden* and *John Rogers*, both of Tulsa, Okla., *Chas. Gibbs* and *Smith & Neill*, all of San Angelo, *Baker, Botts, Parker & Garwood*, of Houston, and *E. F. Smith*, of Austin, for appellants.

See briefs in Douglas Oil Company v. State, ante 369.

*James V. Allred*, Attorney General, *Ralph W. Yarborough*, Assistant Attorney General, *George T. Wilson*, special counsel, *James Cornell, Robert G. Hughes*, all of San Angelo, *C. B. Collard*, of Odessa, *Cantey, Hanger & McMahon, Mark McMahon* and *Gillis A. Johnson*, all of Fort Worth, *W. A. Keeling* and *Edwin H. Yeiser*, both of Austin, and *C. W. Truehart*, of San Antonio, for appellee.

See briefs under Douglas Oil Company v. State, ante 369.

MR. JUSTICE PIERSON delivered the opinion of the court.

This case, commonly called the California Case, was brought by the State of Texas through its Attorney General Claude Pollard as an action of trespass to try title. The land involved,

situated in Pecos County, Texas, is described as "all that certain area bounded on the north by survey 34½, on the west by surveys 33 and 35, on the south by surveys 28 and 33, all in Block 194, G. C. & S. F. Ry. Co., and also on the south by the Fred Turner, Jr., survey No. 1, and survey No. 61 in Block 1, I. & G. N. R. R. Co., and on the east by said surveys Nos. 34½ and 61," this being followed by a metes and bounds description that ties the area down to the ground. The Yates survey 34½, the Fred Turner, Jr., survey No. 1, and survey No. 61 in Block 1 are all definitely fixed upon the ground, thus leaving in dispute as the principal question in the case the true location of survey 34, Block 194, which is included in the area described, and also incidentally surveys 33, 35 and 28 in Block 194. The contention of defendants Fred Turner, Jr., and Bob Reid, is that the surveys in Block 194 lying east of Block Z are truly located according to their field note calls for course and distance eastward across the block. With this contention the State was originally in accord. The contention of the defendants constituting the Yates group is that surveys in Block 194 should be given an excess west to east by projecting a meridian northward from the position claimed by them as the southwest corner of survey 7, Block C-3. The defendants constituting the Douglas or Smith group contend for an adjoinder of the lines of Block 194 to the River Surveys on the east and Runnels County School Land on the north.

The case was tried in the District Court of Travis County, and at the conclusion of the evidence the case was submitted to a jury upon the following special issues:

"Question No. 1: Is the stone mound marked 'N.E. 33 Bl. Z,' referred to in the evidence as 'Canyon Corner'? in substantially the same position as the original stone mound corner called for in the field-notes of Survey 33, Block Z, as being at its northeast corner? Answer this question 'yes' or 'no.'

"Question No. 2: How far in varas is the easting between original S. E. corner of Survey 2, Block Z, referred to in this case as Perry Hill corner, according to an east course arrived at by turning off 115 degrees to the right from the northwest bearing of said corner, to the rock mound marked N. W. 62 as set by R. S. Dod for the northwest corner of Survey 62, Block 1, I. & G. N. Railway surveys in Pecos County, Texas? Answer in varas."

The jury answered these questions in the following manner:

"ANSWER TO QUESTION No. 1. *Yes.*

"ANSWER TO QUESTION No. 2. *14016 varas.*

The trial court held as a matter of law that the surveys in Block 194 were properly constructed by course and distance from the east line of Block Z, and upon the foregoing verdict of the jury, rendered judgment for the State of Texas, subject to the rights of intervener Bob Reid, for a tract of land comprising 101.35 acres, lying east of survey 34, Block 194, south of survey 34½, Block 194, west of survey 34½, Block 194, and survey 61, Block 1, I. & G. N., and north of Fred Turner, Jr., survey No. 1 and said survey 61. Judgment was rendered against the State of Texas and Fred Turner, Jr., on their pleas of estoppel as to a tract of land comprising 106.5 acres alleged to lie immediately to the west of survey 34 and between surveys 34 and 35, Block 194. Judgment was rendered for the State of Texas against the California Company for the sum of $40,-615.71, being the value of royalties on minerals taken from the last described tract which was found to be in survey 34, Block 194.

The defendants in the trial court appealed to the Court of Civil Appeals, and since the question of the location of some of the same surveys was involved in the case of Fred Turner, Jr., v. Mrs. M. A. Smith et al., already before this Court, the Honorable Court of Civil Appeals for the Third Supreme Judicial District, after stating the four methods of locating on the ground Block 194 as contended for by the several litigants, has certified for our determination upon the whole record in the case, questions based on said methods as follows:

"FIRST METHOD:

"This method gives effect to the adjoinder calls in field notes of Block 194 for the E. and N. lines of Block Z and for the lines of surveys in Block 12, but rejects all other adjoinder calls for senior surveys to the south, north and east of the sections in Block 194 lying east of Block Z. Under this method the boundary lines in issue are established by course and distance calls for the E. line of Block Z. This method was urged below in the California case by the State and Turner interests, and is still contended for by the latter. It was adopted by the trial courts in the California and Smith-Turner cases.

"In this connection and in connection with the second and third methods it should be noted that the N. E. corner of Block Z is established in both cases by projection from the concededly established S. E. corner of Block Z (Perry Hill corner) and the N. E. corner of Section 33, Block Z (Canon corner). This latter corner was established by jury findings in the California case and by court findings in the Whiteside case. So located

the E. line of Block Z has an excess of 30.2 varas per section. It is contended by appellees Reed et al. in the Whiteside case that Block Z was an office survey, that Canon corner was not proved an original corner, and that Block Z must be constructed by its field note calls from its established S. E. (Perry Hill) corner. The issue thus raised becomes material to each of the first three methods.

"SECOND METHOD:

"This method differs only from the first in that it does not reject the adjoinder calls in Block 194 for Block 178 or of the latter for Blocks C-3 and C-4. It does reject the adjoinder calls of Blocks 178 and 194 for Block 1, and of Block 194 for Runnels County School Land. It establishes the S. E. corner of Section 7 Block C-3 at 7 miles plus 476 varas E. of Perry Hill corner, giving each of the intervening seven tiers of sections an excess width of 68 varas over field note calls, thus establishing the S. W. corner of Section 7, Block C-3 at 1968 varas west of its S. E. corner. From the thus established S. W. corner of Section 7, Block C-3 projected north the east lines of Sections 19, 22, 23 and 28, Block 194 are established, and each of the six tiers of surveys intervening between this line and the E. line of Block Z is given an excess width over call of 68 varas. The remaining involved sections (31, 33, and 35 to 38) are established by their course and distance calls except where the latter (distance) is modified by adjoinder calls to other established sections in Block 194. (See field notes of these sections in judgment at pages 661 to 663 of the transcript in the Whiteside case). This method was contended for by the State and was adopted by the trial court in the Whiteside case, and is now urged by the State in its brief in this court.

"It should be noted in this connection that the Turner interests (not parties to the Whiteside case) reject the S. E. and S. W. corners of Section 7, Block C-3 as established in that case, contended that the evidence in that regard was not developed in the Whiteside case but that in the California case the location was discredited or disproved. If this method is adopted, the issue thus presented will become material.

"THIRD METHOD:

"This method (contended for by Douglas Oil Company) gives effect to all adjoinder calls in Blocks 194 and 178 for surrounding surveys, disregarding where essential to such adjoinder, course and distance calls. This method necessitates some equitable adjustment of the area involved among the affected sections in Blocks 194 and 178. A proposed such ad-

justment as to the Block 194 affected sections is presented in Douglas Oil Company's map exhibit No. 95 in the Whiteside case. Should this method be adopted the proper basis of apportioning the affected area will become material.
"FOURTH METHOD:

"This method (contended for by appellees Reed et al. in the Whiteside case and in the alternative by Douglas Oil Company) disregards all adjoinder calls in Blocks 194 and 178 for surrounding surveys, except the calls of Block 194 for Block 178, and establishes all of the survey lines in Blocks 178 and 194 by course and distance calls of intervening surveys from Pecos Springs corner. This method is exemplified in map exhibit No. 93 of Douglas Oil Company in the Whiteside case.

"For the reasons above outlined, we deem it advisable and our duty to certify for your decision the following questions:

"1. Which of the above four is the proper method to be applied in establishing the boundary lines of the involved surveys?

"2. If either of the first three is the proper method, is the N. E. corner of Block Z properly established from Canon corner?

"3. If the second is the proper method, is the S. W. corner of Section 7, Block C-3, properly established at the point fixed by the trial court in the Whiteside case; and if so did the trial court in that case adopt the proper method of fixing from that established point the boundaries of the involved surveys?

"4. If the third method is adopted, what is the proper method of establishing the boundaries of the involved surveys from the called adjoinder points and lines of surrounding surveys?"

The State of Texas sued for and recovered in the trial court the above described tract of land, comprising 101.35 acres, and a money judgment of over forty thousand dollars. On the 17th day of November, 1932, the State filed in this Court a brief, which is prefaced by the following statement:

"Since regard for established rules of law as we understand them and regard for the State's financial interest joined in impelling us to adopt the theory that we did adopt in behalf of the State in the Whiteside case it has become necessary for us to say to this Honorable Court that we consider the judgment in this case to be erroneous."

The brief then proceeds to argue the validity of the alleged Dod resurvey. We have reached the conclusion that this position is not tenable.

In the case of Fred Turner, Jr., v. Mrs. M. A. Smith et al., this day decided (ante 338), in which all the contentions made in this case, with the exception of the contentions in support of the "Fourth Method," were urged, this Court held the proper method of establishing the boundary lines involved to be by course and distance from Block Z, in accordance with the "First Method" above set out. After a thorough investigation of the arguments in support of the "Fourth Method," and the record in the case, we cannot agree that this is the correct method for locating the surveys.

■ We answer the first question certified that the "First Method" is the proper method to be applied in establishing the boundary lines of the involved surveys.

■ As to the identity of the northeast corner of survey 33, Block Z, there is no question raised by any party to this suit save intervener John H. Tyler. We have reached the conclusion that such corner was conclusively established. Even if we did not reach such conclusion the verdict of the jury finding it to be established, being supported by ample evidence, is binding on this court. The identity of this corner being established, we answer the second question certified in the affirmative.

The answers given to the first two questions render answers to the remaining question unnecessary.

In answering the certified questions in this case we have purposely avoided expressing any opinion on issues other than those involved in the questions certified.

MR. CHIEF JUSTICE CURETON dissenting.

In so far as the opinions of the Majority of the Court in the above cases hold that there exists a vacancy between the west line of the Yates Survey and the east line of Block 194, and that the surveys in Block 194 should be constructed eastward by course and distance alone, without giving effect to calls for adjoinder on the south with Block 178, I respectfully dissent.

I agree with the conclusion of the Court of Civil Appeals in the case of Smith v. Turner, 13 S. W. (2d) 152, that no vacancy exists, and am of the opinion that the judgment of that Court in reversing the judgment of the District Court, and rendering a decree to the effect that the land claimed by Turner was not vacant, unsurveyed land, should be affirmed.

I am also of the opinion that the District Court in the Whiteside Case (No. 6338) used the correct method in de-

termining the eastern boundary of the sections in Block 194, and that the questions certified in both the Whiteside and California (No. 6339) Cases, which are copied in the Majority opinions, should be answered in a manner consistent with that conclusion, as follows:

1. The answer to the First Certified Question in both the Whiteside and California Cases should be, that the *"Second Method"* described in the Certificate (quoted in the Majority Opinions) was and is the proper method to be applied in establishing the boundary lines of the involved surveys;

2. The Second Certified Question should be answered in the affirmative;

3. Both inquiries embraced in the Third Certified Question should be answered in the affirmative;

4. In view of the foregoing an answer to the Fourth Certified Question is unnecessary.

My reasons for the above conclusions will be stated in formal dissenting opinions which I will file as soon as their preparation may be completed.