**Joan Flores DELANEY**

v.

**UNITED SERVICES LIFE INSURANCE COMPANY.**

**Civ. A. 2782.**

United States District Court
W. D. Texas,
San Antonio Division.

Dec. 27, 1961.

Horace P. Shelton, Jr., of Hoyo, Shelton & Haight, San Antonio, Tex., for plaintiff.

Bond Davis, of Boyle, Wheeler, Gresham, Davis & Gregory, San Antonio, Tex., for defendant.

SPEARS, District Judge.

This suit involves the construction of a "Limitation Due to Aviation Hazard" provision of a $20,000.00 life insurance policy issued by the defendant, a District of Columbia corporation, to Robert H. Delaney, as the insured, on October 1, 1957. The plaintiff, widow of the insured, a resident of Bexar County, Texas, was named as the primary beneficiary. The case was submitted to the Court, without a jury, upon the pleadings, admissions and stipulations of the parties.

In his application dated September 28, 1957, the insured at that time a Lieutenant in the United States Army, stated, among other things, that he had applied for army aviation; that he had been accepted in the Judge Advocate's branch; that he did not then desire aviation; and that he would decline aviation if he was accepted. By an amendment to the application, dated the same day, the following provision was added:

"Limitation Due to Aviation Hazard

"If this policy shall become a claim by death of the insured due to any service, training, travel, flight, ascent or descent in, on, or from any species of aircraft at anytime, except death resulting from travel as a passenger on an aircraft owned and operated by the United States Government or as a passenger on a scheduled passenger air service regularly offered between specified airports, the liability of the company under this policy shall be limited to the premiums paid hereunder or to the then net reserve at time of death, if greater; any provision in this policy to the contrary notwithstanding."

The insured certified that he had done no flying except as a passenger under the conditions outlined in said amendment.

When the policy was issued, it contained a rider incorporating the provision above quoted, and the words "Limitation Due to Aviation Hazard included," were typed on its front and back. It was in full force and effect when the

insured died on May 8, 1959 of injuries received as the pilot and only occupant of an aircraft owned and operated by the United States government, which crashed near Spring Branch, Texas, while on a night training flight. At the time of his death, the insured was receiving incentive pay and was on duty as a regular officer.

Prior to the accident which claimed his life, the insured, on May 1, 1958, advised the defendant on a "Change of Mailing Address" card, with respect to his new mailing address, and, in addition thereto, stated:

"Due to change in my orders I am now going to Flight School at San Marcos, Texas, so please advise me as to your policy."

By letter to the insured dated May 13, 1958, an agent of the insurer wrote that an amendment form "for the purpose of adding extra aviation coverage" to the policy was being enclosed, and advised that if the insured wished to "add aviation coverage," he should complete the form as therein instructed, and return it to the company, together with his policy. The cost of this coverage was stated to be $ .50 per month per $1000 of insurance, or $5.00 per month at the allotment rate. The insured was further advised to correct his allotment, but that since it would probably take two months for the corrected allotment to go through, he should send a check for $10.00 to pay the extra aviation premium for the months of June and July. The amendment form requested the insurer to "cancel Limitation Due to Aviation Hazard and increase premium to $23.30 effective 1 June 1958."

Apparently, the insured completed the form and returned it to the company, together with the $10.00 check, because on May 28, 1958, the same agent for the insurer again wrote to the insured expressing regret that an error had been made in computing the extra premium. He enclosed the old form to be destroyed by the insured as well as new forms indicating that the increase in the monthly allotment would be $28.30, instead of $23.30, making the additional premium $10.00 per month, instead of the $5.00 amount previously quoted. Whereupon, by a postal card dated June 28, 1958, and mailed the same day at San Marcos, Texas, the insured told the agent to cancel the aviation clause in his policy, saying, "I think an additional $10.00 per month for aviation coverage is outrageous. I have other policies that did not even increase when I entered Flight School. If I could get my premiums back I would cancel the entire policy."

Several weeks later, on July 21, 1958, the agent responded to the insured as follows:

"Since you indicated in your application for policy number 52150 that you had applied for army aviation, the policy was issued with a Limitation Due to Aviation Hazard included. The policies which you mention in your post card as not having undergone an increase in premium due to your flight activity were undoubtedly issued before you applied for aviation training, and consequently without the Limitation Due to Aviation Hazard. Had these companies known at the time of issue of your policies that you would become a student pilot, these policies too would have been issued with a Limitation Due to Aviation Hazard, and there would have been an increase in premiums for extra aviation coverage upon your beginning of pilot training.

"Your policy number 52150 has a face amount of $20,000 for the first 20 years and the extra aviation premium per month at the rate of $ .50 per month per $1000 of insurance therefore amounts to $10.-00. We should like to point out that the rate of $ .50 per month per $1000 insurance is by no means excessive as compared to the rates charged by other insurance companies.

"Again we wish to apologize for having originally quoted you the wrong rate.

"Unless we hear from you further, extra aviation coverage will not be added to your policy."

Subsequently, on August 19, 1958, said agent again wrote to the insured informing him that, "Inasmuch as we have had no further word from you in regard to adding the aviation coverage to the above policy, we are enclosing our voucher number 22595 for $10.00. This represents your personal remittance on this policy." The voucher was dated August 15, 1958, made payable to the insured, and cashed by him on or about August 27, 1958.

The plaintiff claims that she is entitled to judgment, because when the insured was killed, he was a "passenger" in an aircraft owned and operated by the United States government; therefore, his death was clearly within one of the exceptions to the aviation rider. The case of Continental Casualty Co. v. Warren (1953), 152 Tex. 164, 254 S.W.2d 762, 764, decided by the Supreme Court of Texas, is cited in support of that position. There, the Court, in holding that the pilot was covered by a policy indemnifying the insured for loss resulting from injury sustained in consequence of "riding as a passenger" in a specified airplane owned by the insured and piloted by an authorized person, said that the words "as a passenger" could be construed to mean "as an occupant," and concluded that the special rule of construction governing insurance cases requires that exceptions and words of limitations be strictly construed against the insurer, and favors a solution that would include rather than exclude the pilot. There is no language in the aviation rider involved herein which would compel a different conclusion, and "the intent of the policy to exclude the pilot is not so certain as to make it wholly unreasonable to say that he was included." Since the Warren Case, supra, was decided more than four years prior to the date the policy herein was issued, it is even more significant that the insurer, after being put on notice, did not exclude the pilot "beyond question by the simple insertion of a phrase such as 'and not as the pilot.'"

The defendant, however, points to the fact that the insured was admittedly on a training flight, and says that according to the plain language of the aviation rider his death was excluded from the coverage.

Plaintiff, on the other hand, argues that such language can reasonably be interpreted to mean that it applies in the event the death of the insured was due to any aviation training, *except* as a result of travel as a passenger on an aircraft owned and operated by the United States government; that the insurance company chose the words and is bound by them; that the language of the insurance policy which is susceptible of more than one construction should be interpreted strictly against the insurer and liberally in favor of the insured; and that since the insured, as the pilot, under the law, was a "passenger" on a government owned and operated aircraft, his death was covered by the policy, despite the fact that he was on a night training flight.

It certainly cannot be said that plaintiff's argument is unreasonable, even if it could be said that the defendant's interpretation constitutes "a more likely reflection of the intent of the parties." Continental Casualty Company v. Warren, supra. Neither Green v. Mutual Benefit Life Insurance Company, 1st Cir., 144 F.2d 55, nor McCann v. National Life & Accident Insurance Company, Tex.Civ.App., 226 S.W.2d 177, error refused, relied upon by the defendant, is in point, because there was no ambiguity in the aviation rider involved in either case. There is little, if any, similarity between those riders and the one now before this Court, except that all three relate to risks incident to aviation.

The next contention urged by the defendant is that even if an ambiguity in

the rider existed, the conduct of the parties long before the accident demonstrates that the insured understood the terms of the contract, and knew that it would not cover his death resulting from any training flight undertaken by him as the pilot of a government owned and operated aircraft. The case of Sulzbacher v. Travelers Insurance Company, 8 Cir., 137 F.2d 386, is cited in support of this proposition. In that case, however, there was no question but that the conduct of the insured was, beyond any doubt, directed toward securing an amendment in order to gain protection against the hazards of aerial navigation which the original policy expressly excluded; while, in the case at bar, the insured already had the coverage now claimed, when the correspondence with the company was begun by him, and there is considerable doubt as to just what he did know or understand about the policy.

It must be conceded that the conduct of the insured suggests the possibility that he did not think his training as a student pilot was covered by the policy, but the conclusion that he knew and understood that he did not have such coverage does not follow therefrom as a matter of law. He might just as reasonably have had in mind a desire for additional coverage which would include, for example, travel in a privately owned plane, in a non-scheduled air liner, and in a plane owned by a flying school training flyers under government contract, none of which was then covered by the policy. The cancellation of the aviation rider would have accomplished this and given the "extra" coverage referred to by the agent for the company, because it would have left him with no aviation restrictions whatever.

True, the tenor of the agent's letter of July 21, 1958, almost ten months after the effective date of the policy, was to the effect that coverage of a student beginning pilot training would call for extra aviation coverage and an increase in premiums, but the record does not reveal exactly what the insured himself understood with respect to the nature and extent of the coverage he already had. It would be necessary, therefore, to indulge in both speculation and conjecture in order to conclude that he knew and understood that he would not be covered as the pilot on a training flight, even though he occupied a government owned aircraft.

Under the circumstances, I do not believe that the evidence justifies a finding that the insured knew and understood that his death would not be covered by the insurance policy he held with the defendant company.

I conclude, therefore, that the language of the aviation rider is ambiguous; that the insured, as the pilot of a government owned and operated aircraft was a "passenger" therein, within the meaning of the rider; that the insured's death was within one of the exceptions set forth in said rider; and that his conduct did not show that he had a contrary understanding. Hence, the plaintiff is entitled to recover of and from the defendant the sum of $20,000.00, representing the face amount of the policy, the 12% penalty provided by law, and $3,500.00 attorney's fees, stipulated by the parties to be a reasonable amount, or a total sum of $25,900.00, and judgment will be entered accordingly. The defendant, of course, is entitled to a refund of $366.00, representing the premiums paid by the insured deposited by the defendant in the registry of the Court.

No findings of fact and conclusion of law other than as set forth in this opinion will be filed.