**UNITED SERVICES LIFE INSURANCE COMPANY, Petitioner,**

v.

**Joan Flores DELANEY, Respondent.**

No. A–10671.

Supreme Court of Texas.

Dec. 1, 1965.

Boyle, Wheeler, Gresham, Davis & Gregory, San Antonio, for petitioner.

Horace P. Shelton, Jr., San Antonio, for respondent.

NORVELL, Justice.

This is a suit for a declaratory judgment brought under the provisions of the Uniform Declaratory Judgments Act (Article 2524–1, Vernon's Ann.Tex.Stats.) by United Services Life Insurance Company against Joan Flores Delaney, the beneficiary named in an insurance policy issued by United Services covering the life of her deceased husband, Robert H. Delaney. The trial court dismissed the suit for want of jurisdiction. The Court of Civil Appeals affirmed, holding that under the facts and circumstances of this case, the suit was one instituted for the purpose of procuring an advisory opinion and hence was a proceeding over which the judicial branch of government had no jurisdiction.

386 S.W.2d 648. We affirm the judgments of the lower courts.

### History of the Litigation

The litigation of which the present suit is a phase is highly involved, but a recitation of the circumstances that brought about the filing of the present proceedings is essential to an understanding of the jurisdictional problem presented.

The insurance policy which is the subject matter of this suit was issued by petitioner United Services on October 1, 1957. On May 8, 1959, the insured, Lieutenant Robert H. Delaney, died of injuries received as the pilot and only occupant of an aircraft owned and operated by the United States government. The policy contained the following clause:

"Limitation Due to Aviation Hazard"
"If this policy shall become a claim by death of the insured due to any service, training, travel, flight, ascent or descent in, on, or from any species of aircraft at anytime, except death resulting from travel as a passenger on an aircraft owned and operated by the United States Government or as a passenger on a scheduled passenger air service regularly offered between specified airports, the liability of the company under this policy shall be limited to the premiums paid hereunder or to the then net reserve at time of death, if greater; any provision in this policy to the contrary notwithstanding."

The company asserted that this limitation was applicable to the case and denied liability. Mrs. Delaney thereupon filed suit in the United States District Court for the Western District of Texas. On December 27, 1961, the judge of said court handed down his opinion supporting the proposition that Lieutenant Delaney's death was covered by the policy. 201 F.Supp. 25. Judgment was rendered awarding Mrs. Delaney a recovery.

In the course of his opinion the District Judge said:

"The plaintiff claims that she is entitled to judgment, because when the insured was killed, he was a 'passenger' in an aircraft owned and operated by the United States government; therefore, his death was clearly within one of the exceptions to the aviation rider. The case of Continental Casualty Co. v. Warren (1953), 152 Tex. 164, 254 S.W.2d 762, 764, decided by the Supreme Court of Texas, is cited in support of that position. There, the Court, in holding that the pilot was covered by a policy indemnifying the insured for loss resulting from injury sustained in consequence of 'riding as a passenger' in a specified airplane owned by the insured and piloted by an authorized person, said that the words 'as a passenger' could be construed to mean 'as an occupant,' and concluded that the special rule of construction governing insurance cases requires that exceptions and words of limitations be strictly construed against the insurer, and favors a solution that would include rather than exclude the pilot. There is no language in the aviation rider involved herein which would compel a different conclusion, and 'the intent of the policy to exclude the pilot is not so certain as to make it wholly unreasonable to say that he was included.' "

Upon appeal to the Fifth Circuit Court of Appeals, the case was referred to a panel of three judges and the judgment of the District Court was affirmed by a vote of two to one. 308 F.2d 484 (1962). The majority agreed with the District Court and held that, "After a close study of that case [Continental Casualty Co. v. Warren, 152 Tex. 164, 254 S.W.2d 762, 1953] we conclude that the principles of law established by it control the decision of this case and we affirm the judgment of the court below." The dissenting judge was of the opinion that the Delaney case could be distinguished from Warren. It is evident, however, that he did not consider that *Warren* was a sound decision. He said:

"I would hold the parties to the plain meaning of everyday words used in their ordinary sense in an unambiguous contract. I decline to aid and abet in the verbocide of the good word 'passenger' ".

Upon rehearing, this case was considered by the Court of Appeals *en banc*, along with the case of Paul Revere Life Insurance Company v. First National Bank, Administrator, 5 Cir., 328 F.2d 483. By a vote of five to four, the Court, relying upon Railroad Commission of Texas v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971, and Louisiana Power & Light Co. v. City of Thibodaux, 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058, invoked the so-called "abstention doctrine". In concluding its opinion the Court said:

"[E]ach of the appellants can, and should, promptly initiate a proceeding in a Texas court seeking a declaratory judgment for the determining of the meaning of the pertinent clauses of the respective insurance contracts, with a review of such judgment by a court of last resort of the State of Texas.

"An order will be entered in each of the appeals staying further proceedings in this Court until the courts of Texas shall have been afforded an opportunity to determine the issues to be submitted. This Court will retain jurisdiction for the purpose of taking such further action as may be required."

In the Paul Revere Life Insurance Company case, the Supreme Court of the United States denied a petition for certiorari, 377 U.S. 935, 84 S.Ct. 1335, 12 L.Ed.2d 798.

Mr. Justice Douglas was in favor of granting the writ[1].

The minority took the position that, "The mandate from Congress that we decide diversity cases, Title 28 U.S.C.A., § 1332; Meredith v. City of Winter Haven, 1943, 320 U.S. 228, 64 S.Ct. 7, 88 L.Ed. 9, makes plain our duty to decide these matters," and pointed out that Texas, unlike Florida, has made no provisions for the certification by federal courts of doubtful questions to its Supreme Court for resolution. Judge John R. Brown filed a special concurring opinion in answer to the dissent in which he expressed the opinion that the Uniform Declaratory Judgments Act, Art. 2524–1, provides a Texas solution for the problem of allowing a state court to decide a question of Texas law involved in a case pending in the federal Court of Appeals.

## Opinion

The question of whether or not the federal court should stay its hand in diversity cases[2] pending state action is a federal question which was settled insofar as this case is concerned by the action of the Supreme Court of the United States in denying the petition for certiorari in the Paul Revere Life Insurance case.[3]

■ There are serious difficulties on the state side of the question. The Uniform Declaratory Judgments Act (Article 2524–1) provides a plenary remedy. A court having jurisdiction to render a declaratory judgment has power to determine issues of fact, issues of state law and issues of federal law if such questions be involved in the particular case. It was not intended to provide for the piecemeal trial of a lawsuit. It is the obvious purpose of the federal Court of Appeals to secure a decision upon an issue of state law so that it may thereafter render a final judgment between the parties. See, East Coast Lumber Terminal, Inc. v. Town of Babylon, 2 Cir., 174 F.2d 106, 8 A.L.R.2d 1219 (1949), 73 Harvard L.Rev. 1358, 1. c. 1360. We have a situation therefore in which a cause or at least portions thereof are pending in two courts,

1. As to abstention in diversity cases, Mr. Justice Douglas stated his position in a dissenting opinion delivered in Clay v. Sun Ins. Office Ltd., 363 U.S. 207, 80 S. Ct. 1222, 4 L.Ed.2d 1170, as follows:

"The situations where a federal court might await decision in a state court or even remand the parties to it should be the exception not the rule. * * * Some litigants have long purses. Many, however, can hardly afford one lawsuit, let alone two. Shuttling the parties between state and federal tribunals is a sure way of defeating the ends of justice. The pursuit of justice is not an academic exercise. There are no foundations to finance the resolution of nice state law questions involved in federal court litigation. The parties are entitled—absent unique and rare situations—to adjudication of their rights in the tribunals which Congress has empowered to act."

2. Mrs. Delaney is a resident of Bexar County, Texas. United Services Life Insurance Company is incorporated under the laws of the District of Columbia.

3. The wisdom and practicability of the "abstention doctrine" particularly in diversity cases is a much mooted question as is evidenced by the opinions filed by the members of the Court of Appeals in this case. There exists a considerable literature concerning the doctrine. For example, see, Consequences of Abstention by a Federal Court, 73 Harvard L.Rev. 1358 (1960); The Abstention Doctrine Reconsidered, 37 Texas L.Rev. 815 (Charles A. Wright, 1959); Federal Procedural Reform and States' Rights to a More Perfect Union, 40 Texas L.Rev. 211 (Charles E. Clark, late Circuit Judge, 2d Cir. 1961); Abstention—Certified Questions—Justiciability—Federal Proceedings Postponed Until State Court Determines Uncertain State Law, 40 Texas L.Rev. 1041 (Gurney R. Miller, Jr., 1962, Case Note; Leiter Minerals, Inc. v. California Co., 241 La. 915, 132 So.2d 845, 1961; Sun Ins. Office, Ltd. v. Clay, Fla., 133 So.2d 735, 1961); Federal Court Abstention in Diversity of Citizenship Litigation, 43 Texas L.Rev. 194 (Charles L. Gowen and William H. Izlar, 1964); Study of the Division of Jurisdiction Between State and Federal Courts, Tentative Draft No. 3, American Law Institute, Commentary, § 1371 (1965).

one of which (the state court) is not empowered to render a final enforceable judgment. The Declaratory Judgment procedure is ill adapted to accomplish the objective sought by the federal appellate court.[4]

From a state standpoint, a fatal impediment to the Texas court's assuming jurisdiction of this litigation in the present posture of the case arises from constitutional considerations. In Douglas Oil Co. v. State (Whiteside case),[5] 81 S.W.2d 1064 (Tex.Civ.App.1935), Chief Justice McClendon writing for the Austin Court of Civil Appeals, discussed at some length the nature and history of advisory opinions. He pointed out that in a few states advisory opinions have been given by judicial tribunals in the absence of constitutional authority and that in a small number of states advisory opinions have been given without either supporting constitutional or statutory authorization. However, the opinion stated that:

"The giving of advisory opinions is generally recognized as a nonjudicial function; and except as noted above has not been practiced in any of the American states. An authorizing provision was proposed in the Federal Constitutional Convention, but was defeated; and the Supreme Court of the United States has always declined to recognize it as within its constituent authority. This view, held also by the state courts except as noted, is a necessary conclusion from the constitutional separation of the powers of government into the three departments, executive, legislative, and judicial, and the essentially implicit deduction that, absent express constitutional authorization, none of these departments may exercise any of the powers inherently pertaining to another."

There are numerous Texas authorities which hold that the giving of advisory opinions is not a judicial function. In Alamo Express, Inc. v. Union City Transfer, 158 Tex. 234, 309 S.W.2d 815 (1958), this Court said, "It is well settled that [Texas] courts will not give advisory opinions." See also, California Products, Inc. v. Puretex Lemon Juice, Inc., 160 Tex. 586, 334 S.W.2d 780, affirming Puretex Lemon Juice, Inc. v. California Products, Inc., 324 S.W.2d 449 (Tex.Civ.App.1959); Board of Water Engineers v. City of San Antonio, 155 Tex. 111, 283 S.W.2d 722 (1955);

---

4. In Pickens v. Hidalgo County Water Control and Improvement District No. 16, 284 S.W.2d 784 (Tex.Civ.App.1955, no wr. hist.) it was said:

"A court will not grant a declaratory judgment if the same issues between the same parties were involved in another cause pending at the time of the filing of the declaratory proceedings."

See also, California Products, Inc. v. Puretex Lemon Juice, Inc., 160 Tex. 586, 334 S.W.2d 780 (1960); Smith v. Garrison, 303 S.W.2d 506 (Tex.Civ.App.1957, no wr. hist.); Southern Traffic Bureau v. Thompson, 232 S.W.2d 742 (Tex.Civ. App.1950, ref. n. r. e.); Joseph v. City of Ranger, 188 S.W.2d 1013 (Tex.Civ. App.1945, ref. w. o. m.); 19 Tex.Jur.2d 152, Declaratory Relief, § 13.

5. The Whiteside case is one of three causes relating to the proper method of constructing block 194, G. C. & S. F., in Pecos County, Texas. The other two cases are generally referred to as the California case [Douglas Oil Co. v. State, 122 Tex. 377, 61 S.W.2d 807] and the Smith-Turner case [Turner v. Smith, 122 Tex. 338, 61 S.W.2d 792]. The judgment of the Court of Civil Appeals in the Whiteside case (81 S.W.2d 1064) was reversed by the Supreme Court under the name and style of Federal Royalty Co. v. State, 128 Tex. 324, 98 S.W.2d 993 (1936). However, much of the opinion of the Court of Civil Appeals was adopted as the opinion of the Supreme Court. In the course of the litigation, a legal snarl developed with reference to certified question practice. The Supreme Court opinion (128 Tex. 324, 98 S.W.2d 993) contains citations to numerous opinions rendered in the course of this litigation. One certified question was dismissed because it called for an advisory opinion. See, Douglas Oil Co. v. State (Whiteside case) 124 Tex. 232, 76 S.W.2d 1043 (1934).

Orange Independent School District v. West Orange Independent School District, 390 S.W.2d 81 (Tex.Civ.App.1965, ref. n. r. e.).

The present suit was originally filed in the district court but it is readily apparent from the order of the Circuit Court that the purpose of its directive is to obtain a decision by this Court upon a point of Texas law so that under the doctrine of Erie Railway Company v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, the federal court may render a judgment in accordance therewith.

■ We have no doubt that, in keeping with the Erie decision, the federal court would render a judgment in keeping with our interpretation of Texas law in this case, but the question is not one of comity, nor of federal policy. It is a question of the power, authority and jurisdiction of the state courts under the Texas Constitution. In Board of Water Engineers v. City of San Antonio, supra, we pointed out that as a prerequisite to the declaratory judgment process, "(a) there shall be a real controversy between the parties, which (b) *will be actually determined by the judicial declaration sought."* (Italics supplied.) If the state court is to entertain a suit for declaratory relief, it must have the power and jurisdiction to settle the controversy by entry of a final judgment. This is not a case in which a federal suit has been stayed in order that some other and different lawsuit pending in the state courts may be determined. Here, in effect, the same suit is pending in both the state and federal courts by reason of a directive which contemplates that the final judgment will be rendered by a federal court. The Circuit Court's reservation of jurisdiction to render final judgment renders these proceedings advisory in nature.

The leading case upon the point is Morrow v. Corbin, 122 Tex. 553, 62 S.W.2d 641 (1933), opinion by Chief Justice Cureton. The 43rd Legislature adopted two acts. One related to a judicial stay of foreclosure of liens. Acts 1933, 43rd Leg., Ch. 102, p. 225, Article 2218b, Vernon's Ann. Tex.Stats. The other related to the certification of constitutional questions by the district and county courts to the Courts of Civil Appeals. Acts 1933, 43rd Leg., Ch. 71, p. 147, Article 1851a, Vernon's Ann. Tex.Stats.

Acting under the provisions of the latter act, the judge of one of the district courts of Tarrant County certified to the Fort Worth Court of Civil Appeals the question of whether or not the act providing for a judicial stay order (Art. 2218b) was constitutional. In turn, the Court of Civil Appeals certified the question to this Court. The certificate was dismissed for want of jurisdiction. This Court held the 1933 Act of the Legislature was unconstitutional in that it sought to vest the Courts of Civil Appeals with a non-judicial function contrary to the Texas Constitution.

The certification act which was held invalid provided that any district or county court should be empowered to certify to the Court of Civil Appeals any question or questions of the constitutionality of "any law or any order, rule or regulation of any officer, board or other State Commission." The act also provided that the Court of Civil Appeals could in its discretion "forthwith certify said question or questions immediately to the Supreme Court * * *." Section 4 of the act provided that, "The trial court may hold the trial of said cause in abeyance until its questions have been certified and answered. * * *"

This Court said:

"It is obvious that the purpose of this act is to obtain *before judgment in the trial court* the advice of the Court of Civil Appeals and the Supreme Court as to *'the constitutionality of any law or any order, rule or regulation of any officer, board, or other State Commission,'* which may be involved in any case pending but undetermined in a trial court." (Emphasis is that of Chief Justice Cureton.)

It was held that before a power could be classified as judicial under our constitution, the trial tribunal must have the authority to hear the facts, to decide the issues of fact made by the pleadings, to decide the questions of law involved, and possess *the power to enter a judgment on the facts found in accordance with the law as determined by the court.* It follows that a tribunal which is not empowered to render a final judgment is not functioning in a judicial capacity. Since the federal court will enter the final decree, any decision we may make in this case will be advisory in nature.

As to the Texas appellate courts, it was directly held in Morrow that the constitutional provisions relating to this Court and the Courts of Civil Appeals do not authorize said courts to render advisory opinions. It was said:

"We think the plain reading of the Constitution concludes the question that the Supreme Court and the Courts of Civil Appeals may exercise *only these two classes of jurisdiction.* Yett v. Cook, 115 Tex. 175, 180, 268 S.W. 715, 281 S.W. 843. Neither is given any advisory power by the organic law and since not given, under the rule expressio unius est exclusio alterius it is denied and can not be conferred by the Legislature. 15 Corpus Juris, p. 785, § 79; Madison's Journal of the Const.Conv. (Scott's Ed.) pp. 558, 559; Marshall's Life of Washington, chap. 6; Spark's Life of Washington, vol. 10, pp. 359, 542; Thayer's Mem. Advisory Opinions, 13; Story on the Const. (5th Ed.) § 1571; State [ex rel. Mille Lacs County Treasurer] v. Dike, 20 Minn. 363 (Gil. 314); Rice v. Austin, 19 Minn. 103 (Gil. 74), 18 Am.Rep. 330; In re Senate of State, 10 Minn. 78 (Gil. 56); State v. Baughman, 38 Ohio St. 455; Rogers v. Kennard, 54 Tex. 30; State v. Moore, 57 Tex. 307; Arnold v. Leonard, 114 Tex. 535, 540, 273 S.W. 799; 4 Michie's Digest, p. 395, § 10." [6]

We are aware of the fact that the Supreme Court of Louisiana in Leiter Minerals, Inc. v. California Co., 241 La. 915, 132 So.2d 845 (1961) in effect rendered an advisory opinion in the form of a declaratory judgment pursuant to a directive of the United States Supreme Court. The majority opinion frankly acknowledged that an advisory opinion was called for. It was said that:

"To us it is evident that in this action, instituted pursuant to the directive of the United States Supreme Court under the Louisiana Declaratory

6. Chief Justice Cureton discussed at some length the old certified question practice involving the Courts of Civil Appeals and the Supreme Court. This practice was largely rendered obsolete by the Legislature in 1953. See, Articles 1728 and 1821, Vernon's Ann.Tex.Stats., as amended in 1953, New Legislation, Norvell and Peace, 16 Texas Bar Journal 581 (1953), Appellate Procedure in Texas, §§ 23.1 to 23.3, incl., Certification of Questions. In discussing the dissenting opinion of Chief Justice Stayton in Darnell v. Lyon, 85 Tex. 455, 22 S.W. 304, 960, Chief Justice Cureton described it as being "perhaps the strongest opinion he ever wrote, in which he held the certification statutes void" and further said, "Suffice it to say that we think the opinion was and is unanswerable; that the majority of the court at that time did not attempt its refutation, nor has any subsequent court endeavored to answer it." In Morrow v. Corbin, the Court in effect assumed that the practice had a constitutional basis,—"The question being one of practice in which the power has been consistently exercised for a long period of time, with no substantive right of the citizen involved, we will presume that there existed then and that there exists now a constitutional basis for the law, although elusive to us, and sustain the statute." As relating to the history of the certified question practice, see opinion on rehearing in Akers v. Epperson, 172 S.W. 2d 512, l. c. 517 (Tex.Civ.App.1942), certified question answered 141 Tex. 189, 171 S.W.2d 483, 156 A.L.R. 1028. Since Morrow v. Corbin, the old certified question cases afford no support for the practice suggested in this case.

Judgments Act, we are called upon to render only an advisory opinion. * * This case is unusual, however, in that the highest court in the land deems it 'advisable' for us to render such an opinion. Therefore, out of respect for, and as a courtesy to, that court, we proceed to do so, in the hope that our opinion will be of some assistance to the United States Supreme Court in its solution of the fundamental question raised in the litigation pending in the federal courts."

The majority opinion also recognized that the case was pending in two courts of different jurisdictions at the same time. It is said:

"We are mindful, however, that the interpretation of this reservation is for the United States courts, and not for us in this proceeding, even though Leiter's petition in this suit, after praying for an interpretation of Act 315 of 1940 as outlined in the opinion of the Supreme Court, asks the court to declare that Act 315 of 1940 applies to the mineral reservation in the deed to the government. * * * The interpretation of the contract is for the United States courts."

Because of this circumstance, the Louisiana opinion is highly tentative in nature. For example, it is said:

"If the United States Supreme Court construes the reservation as one establishing a servitude for a certain time or of specific duration * * * then Act 315 of 1940 is not applicable and if applied would be unconstitutional. * * *

"If the United States Supreme Court concludes * * * that the reservation does not establish a servitude for a certain time or of specific duration

but establishes one of uncertain and indefinite duration, and that it was the intention of the parties to fix by contract the period of liberative prescription, then Act 315 of 1940 is applicable and constitutional."

■ Perhaps the Leiter case presents a more usual litigable situation than does the present case. In *Leiter* it was conceded that there were questions for federal court decision and perhaps, depending upon the federal action taken, there might be questions involving interpretation of state law. Here, the parties seemingly treat the case as involving a question of state law only, such question being whether or not the decision of this Court in Continental Casualty Company v. Warren, 152 Tex. 164, 254 S.W.2d 762, should be followed. However, the circumstance that there seems to be no disputed fact issue or question of federal law involved should not obscure the controlling factors in the case. Should we here answer the question which is propounded to us upon the theory that we have a declaratory judgment case before us, we would be compelled, as a logical proposition, to take the same position as that taken by the majority of the Louisiana court. That position recognizes that a tribunal of the judicial branch of government may constitutionally render an advisory opinion and, consequently, in the usual case (i. e. one involving fact issues), we would trim the plenary remedy of declaratory judgment to something less than the rendition of a final judgment in a lawsuit by eliminating all decisions involving fact issues and questions of federal law. We believe it axiomatic that in diversity cases, no federal court can constitutionally cede to a state court, jurisdiction to decide fact issues or questions of federal law. What the Louisiana court did in *Leiter* was to adopt an advisory opinion practice.[7]

7. In the American Law Institute's Study of the Division of Jurisdiction between State and Federal Courts, Tentative Draft No. 3 (April 15, 1965) Commentary, § 1361, it is said:

"The Leiter Minerals litigation remains unresolved, Leiter Minerals, Inc. v. United States, 329 F.2d 85 (5th Cir. 1964), more than eleven years after it was commenced and seven years after

The Louisiana majority opinion contains no discussion of constitutional questions and we must necessarily assume that under the Louisiana decisions, no constitutional inhibition against the advisory opinion is recognized. We have a contrary situation existing in this state. In Douglas Oil Co. v. State (Whiteside case), 124 Tex. 232, 76 S.W.2d 1043 (1934), this Court dismissed a certified question from a Court of Civil Appeals because, "The certificate calls upon the Supreme Court to give an advisory opinion, which is not permitted. Morrow v. Corbin, 122 Tex. 553, 62 S.W.(2d) 641."

 Since the rendition of advisory opinions by courts is unauthorized by our constitution, it is undoubtedly sound law to say that the directive of a federal court could no more operate to vest this Court with jurisdiction to render an advisory opinion than it could empower this Court to try and determine a criminal case contrary to the peculiar provisions of the Texas Constitution which vest that jurisdiction in the Court of Criminal Appeals. Under our judicial set-up, some matters are settled by constitutional provision, others are determined by statute, while still others are controlled by court decisions or court promulgated rules. We are here confronted with a constitutional lack of power.

 Any action we might take in this proceeding could not operate as res judicata in the federal court. It is a rule of general application that the pendency of an *in personam* action in a state court is not a ground for abatement or injunctive relief against the prosecution of the same suit in a federal court. This, because, "Whenever a judgment is rendered in one of the courts and pleaded in the other, the effect of that judgment is to be determined by the application of the principles of res adjudicata by the court in which the action is still pending in the orderly exercise of its jurisdiction, as it would determine any other question of fact or law arising in the progress of the case." Kline v. Burke Construction Co., 260 U.S. 226, 43 S.Ct. 79, 67 L.Ed. 226, 24 A.L.R. 1077 (1922). Obviously, any answer which we should give as to the bindingness of our holding in Continental Casualty Company v. Warren would not control federal court action under the doctrine of res judicata. Actually what we are called upon to do is to answer a question and not render a judgment. As above stated, this case is now pending in two separate courts at one and the same time [8] with the power vested in one court only (the Circuit Court of Appeals) to render a final judgment. The rule of Erie Railroad Company v.

---

abstention was ordered. Leiter Minerals, Inc. v. United States, 352 U.S. 220 [77 S.Ct. 287, 1 L.Ed.2d 267] (1957)."

Mr. Gurney R. Miller, Jr., in his case note relating to Leiter Minerals, Inc. v. California Co., 241 La. 915, 132 So.2d 845, contained in 40 Texas L.Rev. 1041, regards the action of the Louisiana Court as being an assumption of jurisdiction even though the court recognized that no justiciable controversy existed. He contends that the effect of the use of the abstention doctrine and the modified and curtailed declaratory judgment procedure adopted in Leiter is to "place the state courts in the role of an advisory committee (and that) this role should not be accepted."

8. In his dissenting opinion in Darnell v. Lyon, 85 Tex. 455, 22 S.W. 304 (1893), which was approved in Morrow v. Corbin,

122 Tex. 553, 62 S.W.2d 641 (1933), Chief Justice Stayton in speaking of concurrent jurisdiction of appellate courts under the Texas Constitution said:

"A court is said to have jurisdiction concurrent or co-ordinate with that possessed by another, when each has power, under the same facts and conditions, to determine and enforce the right of a litigant, and the general rule, when such jurisdiction is possessed by two or more courts, is for the one first acquiring jurisdiction of a particular cause to retain it; but there is no instance, under the constitution of this state, in which two courts can exercise concurrent or co-ordinate appellate jurisdiction."

See also, comments of Chief Justice McClendon relating to Morrow v. Corbin and Darnell v. Lyon contained in Douglas Oil Co. v. State (Whiteside case), 81 S.W.2d 1064 (Tex.Civ.App.).

Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487 (1938) is involved, but that doctrine is essentially one of precedent or stare decisis and wholly unrelated to res judicata.

While in a one point case involving a matter of state law, some apparent plausibility may be marshalled to support an argument along lines suggested by the rule of res judicata, such argument wholly fails when applied to a case involving fact issues or questions of federal law. This, for the reason that the state court cannot under a procedure such as adopted in this case render a conclusive judgment as to such issues. England v. Louisiana State Board of Medical Examiners, 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964).

Seemingly both litigating parties are agreed that some form of effective communication should exist between the state and federal courts relating to cases involving questions of state law which come within the ambit of the Erie doctrine. However, the declaratory judgment procedure, necessitating as it does, the filing of a suit in a trial court and the prosecution of an appeal to an intermediate appellate court and thence to this Court, is highly cumbersome, expensive and time consuming. The process is rather like burning a house to roast a pig. A certified question practice, which in the light of the Texas experience,[9] might be expected to present some attendant and vexatious problems, seems more advisable. The federal courts are only interested in decisions of this Court relating to questions of Texas law. As a practical matter, the question should come directly to this Court from either the Supreme Court of the United States or one of the Circuit Courts of Appeals. Because of the Texas Constitution and the decisions of this Court construing some of its provisions, it would be necessary to amend our fundamental law in order to accomplish the ends desired. However, if reform be advisable and the need for change be substantial, the legislative power is generally responsive even though constitutional amendment may be involved.[10]

### Conclusion

For the reasons above stated, we hold that the trial court properly refused to assume jurisdiction of this case and the Court of Civil Appeals correctly affirmed its decision. The judgments of both courts below are affirmed.

CALVERT, C. J., and HAMILTON and STEAKLEY, JJ., dissenting.

POPE, J., not sitting.

STEAKLEY, Justice (dissenting).

Whether or not we agree in principle, the Federal Court of Appeals, while retaining jurisdiction "for the purpose of taking such further action as may be required," is standing by in a diversity case, in which no federal question is to be decided and no fact question is to be resolved, while the parties obtain an adjudication under our declaratory judgment procedure of a question of local law. I would test the question of whether the judgment of our courts would be advisory only, and hence whether or not we have jurisdiction, by two considerations: First, whether our courts in the declaratory judgment proceeding can enter final judgment granting the relief sought, and, second, whether the judgment of our

---

9. Akers v. Epperson, 172 S.W.2d 512, 517 (Tex.Civ.App.1942). Also, see the Whiteside case mentioned in Footnote 5, supra.

10. The State of Florida has devised a statutory system embracing the certified question device. Evidently the Florida Constitution authorizes such action by its Legislature. See, Sun Ins. Office, Ltd. v. Clay, Fla., 133 So.2d 735 (1961); Consequences of Absention by a Federal Court, 73 Harvard L.Rev. 1358, lc. 1368.

courts will conclusively settle and terminate the controversy between the parties.

As to the first, this is simply a proceeding to obtain a declaration under local law of the legal rights of an insurance company and the beneficiary of a policy issued by the company. There is no impediment to state jurisdiction in the fact that a suit involving the same subject matter is pending in a federal court. It was held in Kline v. Burke Construction Co., 260 U.S. 226, 232, 43 S.Ct. 79, 82, 67 L.Ed. 226 (1922):

"Where a suit is strictly in personam, in which nothing more than a personal judgment is sought, there is no objection to a subsequent action in another jurisdiction, either before or after judgment, although the same issues are to be tried and determined; and this because it neither ousts the jurisdiction of the court in which the first suit was brought, nor does it delay or obstruct the exercise of that jurisdiction, nor lead to a conflict of authority where each court acts in accordance with law."

This was reaffirmed in McNeese v. Board of Education, etc., 373 U.S. 668, 673–674 n. 5, 83 S.Ct. 1433, 1436, 10 L.Ed.2d 622 (1963):

"And we held in Kline v. Burke Constr. Co. * * * a suit in personam based on diversity of citizenship could continue in the federal court even though a suit on the same cause of action had been started in the state court: 'Each court is free to proceed in its own way and in its own time, without reference to the proceedings in the other court. Whenever a judgment is rendered in one of the courts and pleaded in the other, the effect of that judgment is to be determined by the application of the principles of res adjudicata by the court in which the action is still pending * * *.'"

For an explication of the above rule, see Hart & Wechsler, The Federal Courts and the Federal System 1073–74 (1953); Gowen & Izler, Abstentation in Diversity Cases, 43 Tex.L.Rev. 194, 207 (1964).

Contrary, then, to the disparagement in the majority opinion, it is not a directive of a federal court which vests our courts with jurisdiction to declare the rights of the parties in this proceeding but, to the contrary, that which does so is the filing of a suit invoking the provisions of the Texas Declaratory Judgments Act, Article 2524–1, Vernon's Annotated Civil Statutes. The Act has been upheld by this Court and has been given a liberal construction to accomplish its purposes. Cobb v. Harrington, 144 Tex. 360, 190 S.W.2d 709, 172 A.L.R. 837 (1945); Guilliams v. Koonsman, 154 Tex. 401, 279 S.W.2d 579, 57 A.L.R.2d 97 (1955). Apparently the majority in its reliance upon Morrow v. Corbin, 122 Tex. 553, 62 S.W.2d 641 (1933), is of the view that the giving of consequential relief is essential to an exercise of the judicial function and prerequisite to the existence of jurisdiction in a court to enter a declaratory judgment. It is probably true that the later-enacted Texas Declaratory Judgments Act will not stand a literal application of the conditions to jurisdiction enumerated in Morrow in deciding the problem there presented. But the Texas Act is written in express contemplation of utilization of its procedures in situations where consequential relief cannot be given.

Borchard in his work on Declaratory Judgments 25 (2d ed. 1941), speaks of a declaratory judgment action as differing "in form in no essential respect from any other action, except that the prayer for relief does not seek execution or performance from the defendant or opposing party." The Supreme Court of Indiana speaks in terms of a declaratory judgment being "none the less an exercise of judicial power even though it does not carry with it, by force of the judgment itself, consequential relief." Rauh v. Fletcher Savings and

Trust Co., 207 Ind. 638, 194 N.E. 334, 336 (1935).

This Court delineated the true advisory opinion situation in California Products, Inc. v. Puretex Lemon Juice, Inc., 160 Tex. 586, 334 S.W.2d 780 (1960), as one where an actual and real dispute was not before the court and a concrete case was not present; as a consequence, a judgment by the court would settle nothing and be binding on no one. But the situation before us here is as expressed by the Supreme Court of Michigan: "When an actual controversy exists between parties, [and] is submitted in formal proceedings to a court, the decision of the court is binding upon the parties and their privies and is res adjudicata of the issue in any other proceeding in court in which it may be involved, what else can the decision be but the exercise of judicial power?" Washington-Detroit Theatre Co. v. Moore, 249 Mich. 673, 229 N.W. 618, 620, 68 A.L.R. 105 (1930).

The second of the conditions to jurisdiction which I pose is also present. Under the circumstances of this case—no federal or fact questions—the final judgment of our courts will be conclusive and further action in the federal courts may be only in accordance therewith. Erie R.R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487 (1938); West v. American Tel. & Tel. Co., 311 U.S. 223, 61 S.Ct. 179, 85 L.Ed. 139 (1940); Clay v. Sun Insurance Office, Ltd., 363 U.S. 207, 80 S.Ct. 1222, 4 L.Ed.2d 1170 (1960). The last word on a question of local law is the state forum. Railroad Commission of

Texas v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). This is res judicata in principle if not in the conventional sense. Indeed, the Fifth Circuit Court of Appeals in its subsequent opinion in Clay [Sun Insurance Office, Ltd. v. Clay, 319 F.2d 505 (1963)], in reasoning to another problem, stated the view that an adjudication of the state court "in litigation inter parties during a federal court abstention" would constitute "a binding determination which became the law of the case and res judicata." A decision in the state court even on a federal question is res judicata where the litigant, though going to the state court involuntarily, does not reserve his right to return to the federal forum for a final adjudication. England v. Louisiana State Board of Medical Examiners, 375 U.S. 411, 84 S.Ct. 461, 11 L. Ed.2d 440 (1964); Propper v. Clark, 337 U.S. 472, 69 S.Ct. 1333, 93 L.Ed. 1480 (1949).[1] The right of a litigant in a diversity case to a federal determination of federal or of fact questions may, in the abstention situation, be protected either by a reservation of jurisdiction by the federal court or by a reservation of such right by the litigant. But even in such circumstances neither the federal court nor a litigant can prevent the binding force of a decision of a state court on a question of local law. It was said in Guaranty Trust Co. v. York, 326 U.S. 99, 108, 65 S.Ct. 1464, 1469, 89 L.Ed. 2079, 2086, 160 A.L.R. 1231 (1945):

"Here we are dealing with a right to recover derived not from the United States but from one of the States. When, because the plaintiff happens to

1. In Propper the Supreme Court of the United States said that although the federal district court could compel parties before it to litigate in an appropriate state court some narrow issue of state law, " * * * as the state court could reasonably require complete adjudication of the controversy, [if the state court did so] the District Court would perhaps be compelled to stay proceedings in the state court to protect its own jurisdiction. 28 U.S.C.1948 ed. § 2283. Otherwise in sending a fragment of the litigation to a state court, the federal court might find itself blocked by *res judicata* with the result that the entire federal controversy would be ousted from the federal courts where it was placed by Congress." See the concurring opinion in England.

be a non-resident, such a right is enforceable in a federal as well as in a State court, the forms and mode of enforcing the right may at times, naturally enough, vary because the two judicial systems are not identical. But since a federal court adjudicating a state-created right solely because of the diversity of citizenship of the parties is for that purpose, in effect, only another court of the State, it cannot afford recovery if the right to recover is made unavailable by the State nor can it substantially affect the enforcement of the right as given by the State."

Policy considerations seem to have fathered the majority holding. The declaratory judgment procedure is described as "highly cumbersome, expensive and time consuming"; a certified question practice is said to be "more advisable" and "the question should come directly to this Court from either the Supreme Court of the United States or one of the Circuit Courts of Appeals." These are policy considerations, as is the question of whether this proceeding represents a sensible accommodation between the federal and state judicial systems. But I fail to see the relevance of these matters to the problem of jurisdiction. Nor do I feel that our decision here should be influenced by jurisdiction or policy problems which may be presented in the abstention case involving federal or fact questions where our courts will have only a fragment of a case pending in the federal courts. This is the "one point case involving a matter of state law" which gives the majority some pause [majority opinion page 864]. What is decided by our courts will terminate the controversy between the parties and in my view will be res judicata as to the entire case. Clearly, the judgment will be a decision made in adversary litigation in our courts and will leave nothing for the federal courts to decide.

CALVERT, C. J., and HAMILTON, J., join in this dissent.